## BARBE v. DAVIS.

### December 21, 1835.

*Rule to show cause why the judgment should not be opened, the fieri facias set aside, and why defendant should not enter bail for stay of execution.*

Under the act of the 28th of March 1835, where the suit is by *capias*, the plaintiff is entitled to judgment for want of an affidavit of defence although the defendant has not put in special bail.

Judgment for want of an affidavit of defence will be opened on satisfactory evidence of the existence of a just defence, where the application is seasonable.

THE facts were these.

On the 12th of June 1835, a *capias ad respondendum* was issued in this case, returnable on the first Monday of July following. Upon this the defendant was arrested, and gave bail to the sheriff. On the 30th of June, the plaintiff filed his declaration, being *assumpsit* on a promissory note, a copy of which was filed at the same time. July 25th, on motion, judgment was entered for the plaintiff, *for want of an affidavit of defence.* Damages having been assessed by the prothonotary, on the 27th of the same month a *fieri facias* was issued upon this judgment. Two days afterwards the defendant made an *affidavit*, and thereupon obtained a rule "to show cause why the judgment should not be opened; and why the *fieri facias* should not be set aside; and why bail should not be entered for stay of execution.

*H. M. Phillips,* for the rule.
*Ingraham, contra.*

Cited in argument: Hertzog *v.* Ellis, 3 *Binn.* 200; Moulson *v.* Rees, 6 *Binn.* 32; Phillips *v.* Ohrer, 5 *Serg. & Rawle* 419; Act of 1724—5, *Purd. Dig.;* 4 William and Mary, c. 21; *Roberts* 370, 371; Nones *v.* Gelbaud, 11 *Serg. & Rawle* 9.

STROUD, J.—The defendant asks that the judgment should be opened on three grounds: 1. Because he has sworn that he has a set-off to the demand of the plaintiff. 2. Because he has sworn that

[Barbe v. Davis.]

another person ought to have been made a co-defendant with him. 3. That the judgment was granted before he had entered special bail, and before the expiration of the time which, by a rule of court then in force, was allowed for that purpose.

In regard to the first two grounds, while it is conceded that on satisfactory evidence of the existence of a just defence *on the merits* of the action, the court would open a judgment taken under this law, where the application was seasonable, as in this instance, yet such evidence is not furnished by this affidavit. The statement, as to the set-off, is too indefinite to be regarded; and the omission of his co-partner cannot seriously injure the defendant. His claim for contribution will still subsist unaffected by this omission. The third ground is, however, very important, inasmuch as if sustained, it will interfere with the beneficial operation of the act of assembly to a great extent.

The section of the act of assembly under which this judgment was granted, is in these words: "in all actions instituted on bills, notes, bonds, or other instruments of writing for the payment of money, &c., it shall be lawful for the plaintiff, *on or at any time after the third Saturday* succeeding the several return days hereinbefore designated, on motion, to enter a *judgment by default,* notwithstanding an appearance by attorney, *unless the defendant shall previously have filed an affidavit of defence,* stating therein the nature and character of the same; provided, that in all such cases no judgment shall be entered by virtue of this section, unless the said plaintiff shall, within two weeks after the return of the original process, file in the office of the prothonotary of the court hereby erected, a copy of the instrument of writing, &c., on which such action has been brought."

The language of this section, "*all actions instituted,*" manifestly comprehends as well those commenced by *capias* as by *summons.* The same reason exists for granting summary judgment where the process is of the one kind or of the other. If a discrimination had been intended, it would have been expressed; and an action is *instituted* or *brought* (this latter word being used in the *proviso*) the moment the writ is sued out. Such is not only the common acceptation of this language, but its legal import. Thus, in Arundel *v.* Arundel, *Cro. Eliz.* 677, "Error to reverse a fine levied." Three errors were assigned; one of which was, "because the writ of covenant whereupon it was levied, bore *teste* the 2d of January; 21 *Eliz.*; and the *dedimus potestatem,* to take the conusance, bore date the same

[Barbe v. Davis.]

2d day of January, reciting *quod cum breve conventionis pendet,* &c., whereas it was not depending until the return, which was *Octob. Hilarii.* But the court held this was not error; *for the writ is pendent presently upon the purchase thereof.* And see Hertzog v. Ellis, 3 *Binn.* 209; Moulson v. Rees, 6 *Binn.* 32; and Combe v. Pitt, 3 *Burr.* 1423. The defendant's counsel concedes, that the literal meaning of the expression "*instituted and brought,*" would justify the construction that the moment the writ issues, it originates an action in court; and he has no doubt, that when the process is a *summons,* the delivery of the writ is, according to the spirit of the act, the commencement of a suit, upon which judgment may be entered. But he contends, that inasmuch as where the process is a *capias,* and the defendant gives bail to the sheriff, a rule of this court allows four weeks to the defendant to enter special bail after the return day of the writ, and that until the entry of such bail, the defendant is not in court, the plaintiff cannot obtain judgment, although he has complied with all the provisions of the law to do so. In Hertzog v. Ellis, 3 *Binn.* 209, an analogous question was raised in relation to the arbitration act of 1810. The language of that act is, "it shall be lawful, &c., in all civil suits or actions pending, or that hereafter may be *brought,* &c., to enter at the prothonotary's office at any time after the entry of such action, a rule of reference, &c." The court decreed, that a rule of reference might be entered by the plaintiff at any time after the writ had been issued; Tilghman, C. J., saying in the course of his argument, "the action is entered from the time that it is placed on the prothonotary's docket. The entering or *bringing* the action is one thing; the *appearance* in court another." Much stress is laid in the conclusion of his opinion on the words "*entry of the action;*" but he manifestly considers *bringing* the action as of like import; and without doubt, in that connection they are synonymous. This sentiment is plainly expressed by him afterwards in Moulson v. Rees, 6 *Binn.* 32, where he begins his opinion thus: "the arbitration may be entered at any time *after the issuing of the writ,* which is the *commencement* of the suit, according to the opinion of the court in Hertzog v. Ellis." In Moulson v. Rees, one exception taken to the record, was this: "that the action was arbitrated by the plaintiff below, or before the plaintiff in error (defendant below) *entered* "*special bail* after being arrested on the *capias.*" This was answered by the court precisely as the present objection may properly be answered. "The plaintiff, although a *capias* was issued,

[Barbe v. Davis.]

*has dispensed with special bail, as he had a right to do; and this is for
the advantage of the defendant."*

Although probably undesigned, there is a striking similarity in
the language of the arbitration act and that of the section of the
law under which the judgment in this case was granted. The
words of this section are : " *in all actions instituted, &c., it shall be
lawful* for the plaintiff, AT ANY TIME AFTER THE THIRD SATURDAY,
&c., TO ENTER a judgment by default," &c. As then, in respect to
the arbitration act, the special language was regarded by the supreme
court as overruling the implied obstacle to a rule of reference arising
from the common law doctrine that in personal actions the plaintiff
can take no step in the cause until the defendant has appeared;
so, I have no doubt, the terms of the 2d section of the act consti-
tuting this court, should be construed to sustain the judgment ob-
tained by the plaintiff in this case.

It was in the power of the defendant to enter special bail at any
time after the return of the writ; and it would be strange if his
*voluntary* omission to do so should prejudice the plaintiff, more espe-
cially since the entry would have given him no advantage which he
could not enjoy without it. He might have filed his affidavit of de-
fence in due time, and afterwards entered special bail. He has
chosen to omit it, and the plaintiff is entitled to retain his judgment.

PETTIT, *President,* concurred with STROUD, J. He said that the
common law argument against the right of a plaintiff to proceed in
the cause before regular appearance by the defendant, was held, in
Hertzog *v.* Ellis, 3 *Binn.* 215, to have been entirely discarded by the
plain language of the act of 1810, relative to arbitrations. He
deemed it useless to say what his individual opinion might be as to
the soundness of that conclusion. The present provision, however,
being a substitute for the law of 1810, and the language being
equally strong, he felt himself bound by the views of the supreme
court, which must have been known to the legislature.

JONES, J.—I regret that I cannot entirely concur in the conclusions
to which the court have come in this case. The 2d section of the
act of the 28th of March 1835 is in derogation of the common law.
It introduces a new practice, which may be followed by serious con-
sequences. I think the act should be strictly construed, so far as it
is an innovation, and liberally construed so far as its provisions can

I.—Q

[Barbe v. Davis.]

be made to coincide with the former practice of the court: that is to say, strictly in respect of the instrument upon which the action is brought; strictly as it respects the process by which it is brought; and liberally as it respects the *affidavit* of defence.

The words "judgment by default," I understand in the sense ascribed to them in our books of practice. There may be a judgment for default of appearance, and a judgment for some default after appearance. In actions commenced by summons, if the writ has been duly served, according to the act of the 20th of March 1724—5, and the defendant fails to appear, the plaintiff may file a common appearance for the defendant, and take judgment by *nihil dicit*, which, in contemplation of law, is a judgment for a default after appearance; or, without filing a common appearance, he may, according to the settled practice, take judgment for default of appearance, which is the first and real default of the defendant. But if the defendant appears in person or by attorney, the plaintiff cannot, of course, take judgment by default, unless the defendant should, after his appearance, fail to comply with some rule of practice or some rule of court, specially taken against him. At this point the 2d section of the act of the 28th of March 1835 applies, which allows the plaintiff, under certain restrictions, notwithstanding the defendant's appearance by an attorney, to enter a judgment by default, unless the defendant shall file an affidavit of defence, setting forth the nature and character of the same. This provision imposes a new duty upon the defendant, similar to that imposed by the first rule of this court, and is, in truth, supplementary to the act of the 20th of March 1724—5. It is incumbent on the party to procure the service of his process, and file his declaration according to that act. If the defendant does not appear, he should take judgment under that act. If the defendant should appear, and the cause of action is within the act of the 28th of March 1835, sect. 2, then he must comply with the requisition of this section by filing an *affidavit* of his defence, otherwise the plaintiff may perhaps treat his appearance as a nullity, and enter judgment for default of appearance, or he may allow the appearance to stand, and take judgment upon motion, but without rule, by *nihil dicit*.

In actions commenced by *capias*, there can be no judgment for default of appearance. The plaintiff therefore is bound to effect the appearance of the defendant as his first step. This must be either by taking the defendant into custody, or by his putting in bail.

[Barbe v. Davis.]

In this case the defendant was not in custody, nor had he put in bail, nor had the four weeks allowed to him for putting in bail elapsed. The judgment then was premature. It is a judgment for a default before appearance, against a defendant, who could not be in default until after appearance, and who by the rules of court had not become liable to an action upon the bail bond to the sheriff for not putting in special bail.

For this reason I conceive that the plaintiff ought to have waited till the expiration of four weeks from the return day of the writ. If, at that time, the defendant had not put in bail to the action, the plaintiff might have taken a rule on the sheriff to bring in the body, and, upon compliance with the rule, he might have taken a judgment, unless the defendant had previously filed an affidavit of defence.

If the plaintiff should resort to the bail bond, it would be a suspension of his right to proceed under this act, until the defendant should stay the proceedings upon the bail bond, and appear to the action. Upon appearance, the plaintiff might insist upon an affidavit of defence or a judgment.

But it is said the plaintiff may waive special bail and proceed under this act. The answer does not meet the difficulty. We want an appearance. The objection would be the same in cases where no bail is required. It is only in case of a summons, served according to the act of the 20th of March 1724—5, that the plaintiff can file a common appearance for the defendant. If the process be *capias*, bail must be put in, or the defendant must authorize an appearance to be entered for him according to the rule of court.

Besides, by demanding bail, the plaintiff shows an intention to proceed according to the ordinary course of practice. The defendant, upon finding judgment taken against him after his arrest, within the time allowed him to put in bail, might well say he was surprised; and this is an answer to the argument derived from the cases decided upon the act of 1810, regulating arbitrations. The plaintiff may waive bail under that act, and enter his rule of reference without surprise upon the defendant; for he must serve a notice upon him of his intention to refer the cause to arbitrators, and after they are appointed, he must serve also another notice of the time and place of meeting. But in this case the plaintiff may, at the day he is allowed to take judgment, waive or not waive bail. If he finds an *affidavit* of defence, he will not waive bail; if he finds none, then he

[Barbe v. Davis.]

is ready to waive bail for the benefit of an execution. Such was the waiver in this case. The judgment was entered July 25th, and a *fieri facias* was actually levied on the second day afterwards. How can this be said to be for the benefit of the defendant? Yet that was the argument for the practice of waiving bail, under the act regulating arbitrations.

The statute 4 and 5 *William* and *Mary*, ch. 21, has been cited as applicable to this case. The object of this statute is mistaken. It is in force in this commonwealth, only for the purpose of allowing the service of a declaration upon a defendant who has been taken and committed within the county, and of course, it merely exonerates the plaintiff from having him brought into court by a writ of *habeas corpus*, in order to declare against him or rule him to plead. If this statute be not necessary for this purpose, it is not in force ; for *testatum* writs of *capias ad respondendum* have never been allowed in this state.

These are briefly my views ; and the act, so construed, would furnish a motive for the commencement of actions by summons, except in cases where there is really a necessity for the arrest and detention of the person. It favours the liberty of the citizen ; and it seems to me safe to embody the spirit of this section of the act in the ordinary forms of practice, so far as it can be done, inasmuch as we shall then not only have the light of the common law to guide us in its further construction, but also we shall avoid unnecessary interference with the rules of practice, which have hitherto been considered of some importance, and the incongruities which must otherwise exist in the proceedings of this particular court. Still, I should not like to say, against the opinion of the court, that this judgment is absolutely irregular, or even erroneous. It is possible that the court in the last resort may be of the opinion that the legislature intended by this act to establish a proceeding quite contradictory to the act of 1724—5, and to the settled practices of the courts of this commonwealth in respect to both forms and substance. If so, judgments taken in this manner must stand, however harsh the practice may be upon defendants ; yet I cannot but think that practice the best and the safest which is most congruous with the general course of the practice of the courts of the commonwealth.

Rule discharged.