Hillsborough, ⎱
May 3, 1905. ⎰

## HUTCHINSON *v.* MANCHESTER STREET RAILWAY.

An exception to the denial of a motion for a continuance on account of the illness of counsel who have been relied on to conduct a trial presents no question of law for determination by the supreme court.

Where a motion for continuance on account of the illness of counsel has been heard and denied, a subsequent application of a similar nature may properly be disposed of on the ground that the question presented is *res adjudicata*, if no change in the situation has developed in the meantime.

The presentation of facts which are sufficient in law to disqualify a presiding justice does not entitle the objecting party to a continuance, but to a trial before some member of the court who is qualified to sit in the cause.

The belief of a litigant as to his inability to secure a fair trial before a judge is not material upon the question of the competency of the latter to act in the cause.

A statement by a presiding justice to counsel, to the effect that the latter must expect to be held to an observance of the technicalities insisted upon by them in the trial of causes, does not indicate such prejudice or hostility as to disqualify the judge from sitting at the trial of a similar action subsequently conducted by the same attorneys.

The right of a litigant to object to a judge on the ground of prejudice is waived by the submission to him of successive motions for a continuance of the cause, with full knowledge of the facts upon which the claim of disqualification is based.

A judgment by default may be entered against a defendant who deliberately and intentionally refuses to comply with a special rule of court assigning his cause for trial.

CASE, for personal injuries. February 29, 1904, the defendants filed a petition in the nature of an application for a writ of error. Upon suggestion from the court that the questions sought to be raised upon the petition could be presented by a bill of exceptions, the petitioners filed, by way of amendment to their petition, such a bill, allowed by *Peaslee*, J., at the January term, 1904, of the superior court.

*Burnham, Brown, Jones & Warren*, for the plaintiff.

*Streeter & Hollis* and *Taggart, Tuttle, Burroughs & Wyman*, for the defendants.

PARSONS, C. J. After judgment and execution against the defendants in the superior court, application was made by peti-

tion to the supervisory power of this court for the correction of alleged errors in the proceedings and for an injunction restraining the collection of the execution. Section 5, chapter 78, Laws 1901, provides for the transfer of questions of law arising in the trial of any case in the superior court to this court for final decision, upon a case or statement of facts reserved by the trial justice; also, that "any party aggrieved by the ruling, direction, or judgment of the superior court, seasonably objecting, may allege exceptions thereto in writing, which, being conformable to the truth of the case, shall be allowed by the trial justice and be entered in the supreme court for determination." The same act also provides (s. 7) that "the justices of the supreme court shall do and perform all the duties reasonably requisite and necessary to be done by a court of final jurisdiction of questions of law and general superintendence of inferior courts." The petition therefore presented the question of the jurisdiction of this court to determine questions of law arising in the superior court which were not brought here by exceptions duly allowed by a justice of the superior court, or transferred upon a case reserved by such justice, and also whether, pending the examination of questions so presented, this court could issue a restraining order against the process of the superior court.

The plaintiff duly appeared in answer to the petition and disclaimed any purpose to proceed with the collection of the execution pending the decision of this court. It was therefore considered unnecessary to entertain the serious questions that have been suggested, and at the March session, 1904, the defendants were granted permission to apply for a bill of exceptions and to file the same, when obtained, as an amendment to the petition. · Such course has been pursued. By the bill it appears that the matter of which the defendants complain, and to which alone their exceptions relate, is that they were required by the superior court to proceed with the trial of the case, February 22, 1904, before a jury and the member of the superior court then presiding in the session of the court then held at Manchester, where the case was pending and regularly in order for trial. After various postponements at the request of the defendants, the cause was finally set for trial by the jury upon that day. At the opening of the court, counsel for the defendants filed a motion for continuance upon the ground that their general counsel, who was relied upon to try the case, was unable by reason of sickness to attend court or conduct the trial. The court denied the motion for continuance, and the defendants excepted. No question of law is raised by this exception. "The motion for continuance raised a question of fact, and all such questions are for the trial term." *White* v.

*Dearborn*, 70 N. H. 622; *Clark* v. *Clough*, 62 N. H. 693. The 30th rule of court (71 N. H. 680), providing for a continuance in case of the absence on account of sickness, or other sufficient reason, of counsel who have been relied upon to conduct a trial, does not by its terms give the absolute right of continuance claimed. The case is to be continued only if other counsel cannot be seasonably and properly instructed.

It appears that at the September term, 1903, a considerable number of actions of a similar nature to the present were pending against the defendants, and that upon the defendants' request all of these cases were continued because of the illness of another of the defendants' counsel. In January one of these cases was tried, with the assistance of the counsel whose illness was urged for a further continuance of this case. February 2, the defendants knew that the counsel named in the affidavit would be unable to take part in further trials, and then moved for the continuance of all cases of this character against them. Counsel for the plaintiffs objected, and specially insisted upon a trial in the present case and that of one Villineuve. The motion for continuance was denied as to these two cases. The Villineuve case, which had been set down for February 3, was postponed to February 15, to be followed by this case. On February 15, counsel for the defendants appeared in court and again moved to continue the Hutchinson case on account of the illness of their general counsel. The court ruled that the motion was disposed of February 2, and again denied the motion. Trial of the Villineuve case then proceeded, the defendants being represented by able counsel. That case was finished February 18, and an adjournment was had to February 22. At the hearings upon the motion for continuance, counsel for the plaintiff stated that his client, because of the injury for which suit was brought, was in feeble health; that he desired to testify in his case and probably could never do so if the case was not then tried. This statement was not contradicted or questioned. Upon this state of facts the question was, whether justice required that the plaintiff should have an opportunity to try his case himself, or the defendants be inconvenienced by being required to employ and instruct new counsel, if such could be done. This question was decided, February 2, in favor of the plaintiff, and it is plain that there was evidence upon which the fact could properly be so found. It is not claimed that between February 2 and February 22 any change had developed in the situation, and the motion of that date could properly have been disposed of upon the ground that the question presented was adjudicated three weeks before.

The foregoing motion having been disposed of, the defendants

presented a second motion, in which the only relief asked was a continuance of the cause. As a motion for continuance, the exception to its denial is disposed of by what has already been said. The defendants claim that this motion was a recusation of the presiding judge. If the judge then presiding was disqualified to try the case, it was the right and duty of the defendants to bring the matter to his attention by petition or motion, setting forth the facts relied upon as a disqualification and requesting that he should not sit upon the trial of the cause. If the facts alleged are true, and sufficient in law to disqualify the judge present, the relief to which the party objecting is entitled is not a continuance, but to have some qualified judge proceed with the trial. But to protect their rights it was sufficient for the defendants to call attention to the disqualification of the presiding judge. If disqualified, it was his duty to withdraw from the case. But " a judge ought not to withdraw upon a mere suggestion, unless the cause of recusation is true in fact and sufficient in law; because the office of judge is one necessary for the administration of justice and from which a judge should not be permitted to withdraw without sufficient grounds." *Moses* v. *Julian,* 45 N. H. 52, 53. Two questions were therefore presented by the defendants' motion: (1) were the facts alleged true; and (2) if true, did they constitute legal disqualification. If the facts alleged are not admitted, it is said in *Moses* v. *Julian* that it is the duty of the party objecting to lay before the court proof of their truth, to be passed upon by the judge himself, if alone. The defendants contend that the judge, if disqualified to try the main case, could not be qualified to pass on any question in relation to it. There is great force to this argument so far as matters of fact are involved; but upon the legal question, whether the facts alleged are sufficient in law, the defendants are fully protected by their exception. Assuming, therefore, for the purpose of the discussion, that the defendants are right in their contention that the presiding justice under the circumstances had no authority to pass upon the truth of the matters alleged, the question is whether, assuming the facts to be as alleged, these facts as matter of law disqualified the justice then presiding from further action in the cause.

The motion was as follows: " The defendant further says that, having tried the Hanson case, so called, in strict conformity with the rules of law, as it is informed and believed, but not agreeably to the views of the presiding justice, as later appeared, and the justice after said trial having said to defendant's counsel, among other things, that if it was proposed to try further cases by the methods of the Hanson case by taking so many exceptions to evi-

dence and to so many things done by the court and plaintiffs' counsel, the defendant must expect no concession from this court, and said justice having denied the defendant's motion for a continuance this day filed, and based upon facts known or exhibited to said justice, the defendant is led to fear and believe that it will not be able to have a judicial trial at this time." The only fact directly alleged is the defendants' fear and belief that at the time they could not have a judicial trial. If the defendants meant to be understood as alleging their fear and belief that they could not have a fair trial before the judge then presiding, their fear or belief upon the subject did not disqualify the judge. At common law, interest in the cause was the only ground which disqualified a judge. Bouv. Law Dict., *tit.* Incompetency. "For the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." 3 Bl. Com. *361; Co. Lit. 294, a; 3 Whart. Am. Cr. Law, *s.* 2945; *Russell* v. *Belcher*, 76 Me. 501; *Turner* v. *Commonwealth*, 2 Met. (Ky.) 619, 626; *Powers* v. *Commonwealth*, 114 Ky. 237; *McCauley* v. *Weller*, 12 Cal. 500, 523; *People* v. *Williams*, 24 Cal. 31. "By the common law of this state, a judge related to either party within the fourth degree is not qualified to sit in the cause." *Fowler* v. *Brooks*, 64 N. H. 423. By statute, a justice cannot sit in any case in which he has been concerned as a party or attorney, nor in any appeal in which he acted as judge in the court below; and any statement made to a judge in reference to the merits of any proceeding pending before him, if made by a party to such proceeding, except in open court or in the presence of all parties, is a ground for continuance with costs. P. S., *c.* 207, *ss.* 8, 10, 12. The constitution declares that "it is essential to the preservation of the rights of every individual, . . . that there be an impartial interpretation of the laws and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." Bill of Rights, *art.* 35. These declarations are made as the foundation of the rule that the judges of the supreme judicial court should hold office during good behavior. Whether they support the contention that such judges may be challenged for bias in a particular case, or the opposite, may be a question open to argument, if it has not been otherwise settled by judicial decision (*Moses* v. *Julian, supra*; *State* v. *Sawtelle*, 66 N. H. 488, 503); but neither at common law, nor by the constitution, statutes, or common law of this state, is the opinion of a party of his partiality, or otherwise, material upon the competency of the judge to act in a cause. In some states there are statutes giving a right to a change of venue to a party who

makes affidavit that he fears he cannot have a fair trial before the presiding judge. Under such a statute the present affidavit might be sufficient. *McGoon* v. *Little*, 7 Ill. 42, relied upon by the defendants, depends upon such a statute. Gales St. (Ill.), *p*. 682, *s*. 1. See *People* v. *Compton*, 123 Cal. 403, 412, 413; *Schmidt* v. *Mitchell*, 101 Ky. 570, 592,—72 Am. St. Rep. 427, 438. In *Moses* v. *Julian*, 45 N. H. 52, 56, it is said that "the friendly or hostile relations existing between a judge and one of the parties may be good ground of recusation." The authorities cited in support of this proposition are from the civil and not from the common law. Whether disqualifying bias can be inferred from any facts except those made sufficient by the statute or common law, is a question not directly raised; for the defendants do not allege hostility or prejudice toward them on the part of the judge they claim to have recused.

Although the fact is not distinctly alleged, if any facts were stated from which such prejudice could properly or reasonably be inferred, it might be that parties in such situation ought not to be held to the niceties of pleading, and that an error in the form of their allegation might not be material. The statement attributed to the judge in the motion does not indicate any prejudice or hostility toward the defendants. The substance of it was that if the defendants' counsel insisted upon technicalities in their method of trying cases, they must expect to be held up to the rules asked for by them; making no concessions themselves, they could expect none. At the most, the remark relates to relations between the judge and counsel, which is no cause of challenge even of a juror. A juror is disqualified only when counsel in the cause are counsel for him in a cause then pending in the same court. P. S., *c*. 209, *s*. 25.

But if it be assumed that the motion sufficiently alleges prejudice on the part of the judge toward the defendants, which disqualified him from acting, the objection was waived by the defendants. With knowledge of the fact upon which they base their claim of disqualifying prejudice, they submitted to him the question of continuance of the case upon other grounds, February 2, February 15, and again February 22. They could not present to him this question and take the chances of a favorable decision, holding in reserve the jurisdictional question, to be brought forward if the result should be unfavorable. If they intended to rely upon this objection, they were bound to present it as soon as they were aware of it. The judgment of a judge disqualified at common law is voidable—not void; and the objection to his competency is waived by proceeding in the cause without objection. *Bickford* v. *Franconia*, ante, p. 194; *Fowler* v. *Brooks*, 64 N. H.

423; *Stearns* v. *Wright*, 51 N. H. 600; *Moses* v. *Julian*, 45 N. H. 52. The denial of the motion for continuance, February 22, gave the defendants no information which they did not possess when the same motion was denied twice before. It is not claimed that they then presented any grounds or reasons which had not previously been urged upon the attention of the court.

The defendants further contend that the judgment rendered for the plaintiff is invalid because the question of their liability was not passed upon by the jury. The case was set down for trial February 22, 1904, by special order. The defendants were represented by counsel at the opening of the court, who presented and argued the motions previously considered. Upon the decision of the court upon these motions, this counsel left the room. No person appearing for the defendants, a default was ordered and entered. The defendants, through counsel who had represented them in the cause, had notice before the default was ordered and very shortly thereafter.

A default admits all the material allegations of the declaration except the amount of damages. *Parker* v. *Roberts*, 63 N. H. 431, 434. If the defendants were properly defaulted, there was no question of liability to be tried, because that was admitted. The question therefore is, whether in the situation of the case judgment upon default could properly be ordered against the defendants. It is objected that the validity of the order of default is not before the court upon the record. If this question is not technically presented by the bill of exceptions, it is clear it may be brought here by direct attack upon the judgment, by motion or other proceeding in the superior court. As there is no dispute as to the facts upon any material point and the question has been fully argued, it has been considered without discussion of the manner in which it is presented.

Default "at the present day . . . means the failure to take any step required by the rules of procedure." Rap. & Law. Dict. "There may be a judgment for default of appearance, and a judgment for some default after appearance. . . . If the defendant appears in person or by attorney, the plaintiff cannot, of course, take judgment by default, unless the defendant should, after his appearance, fail to comply with some rule of practice or some rule of court, specially taken against him." *Barbe* v. *Davis*, 1 Miles 118, 122. At common law, in an action for the recovery of land, failure of the defendant to appear after the service of repeated summons authorized proceedings by which the defendant lost his seisin for his non-appearance—a procedure in effect equivalent to the modern judgment by default. Co. Lit. 259, b; 1 Reeve Eng. Law 114, 404; 3 Bouv. Inst., *s.* 3304. But in personal and

mixed actions the appearance of the defendant was essential to the jurisdiction of the court; and while the court could issue process to compel his appearance and to punish him for not appearing, no progress could be made in the action until the defendant appeared or gave bail. 3 Bl. Com. *279–287; *Fisher* v. *Fielding*, 67 Conn. 91, 133; *Ridgway* v. *Horner*, 55 N. J. Law 84; *Hertzog* v. *Ellis*, 3 Binn. 209, 214; *Barbe* v. *Davis*, 1 Miles 118, 121; *Carter* v. *Daizy*, 42 Miss. 501, 504; *Tatlow* v. *Batement*, 2 Lev. 13; *S. C.*, 1 Vent. 135; *Lidcot* v. *Blackwel*, 1 Sid. 373; *Venables* v. *Dasse*, Carth. 113. After the defendant was in court, it became incumbent on the plaintiff to deliver his declaration. If this was neglected beyond the time limited, the plaintiff was in default and the defendant had judgment of nonsuit. When the declaration had been put in, the defendant was required to make his defence and file a plea. If he did not do so in proper time, the plaintiff at once had judgment by default or *nihil dicit*. 3 Bl. Com. *396. Judgments for default against the defendant were either by *nihil dicit*,—for want of plea because the defendant said nothing in answer to the charge in the declaration,—or by *non sum informatus*, where the defendant's attorney declares he has no instruction to say anything in answer to the plaintiff or in defence of his client. 3 Bl. Com. *397; 1 Tidd. Pr. 505. By statute (12 Geo. I, *c.* 29; 1725), if the defendant did not appear or give bail within a certain time, the plaintiff might enter an appearance for him as if he had really appeared, and file common bail in the defendant's name and proceed as if the defendant had himself done so. 3 Bl. Com. *287; *Shadwell* v. *Angel*, 1 Bur. 55.

At the time of the settlement of this country, the modern judgment against the defendant for failure to appear was unknown in the English practice; nothing could be done unless the defendant was, or by legal fiction was considered to be, in court. "The first colonists of New England were fishermen and farmers, their leaders were clergymen, and though they brought with them a general idea of English law and English liberty, the Registers of Writs were sealed books to them. . . . Instead of attempting to follow the forms of the Register, they devised processes of their own. . . . With the introduction of these original processes, new rules as to the effect of them were adopted, and among these was the judgment by default upon a single summons, where there is no appearance. Such a practice was hardly known in England, and it was long after this that we find the expedient to avoid the tedious common-law proceedings to compel an appearance by successive writs, by allowing the plaintiff to enter common bail for the defendant, thus keeping up the appearance of not

rendering judgment till appearance. We regard it as an historical fact that judgment by default for want of any appearance after due service of a single proper process was an original invention of New England, and has existed here since a very early date after the first settlement of the country. And we have not been so fortunate as to trace it to any legislation of the early colonial legislature." *Boston etc. R. R.* v. *State*, 32 N. II. 215, 230, 231. Modern research and the liberality of the state in the reprint of the early laws of the province places at command information as to provincial legislation which was not readily obtainable fifty years ago. Both the Cutt and the Cranfield codes, so called (1679, 1682), provided, in substance, that if the defendant failed to appear, and it appeared by the process that goods were attached or sureties bound for his appearance, after the sureties were three times called the action should proceed to trial, and upon judgment for the plaintiff execution should issue against the defendant, " and the surety, or goods attached, shal stand good for one month after judgment." 1 N. H. Prov. Laws (Batch. ed.), *p.* 34, *s.* 32; *Ib.*, *p.* 71, *s.* 22. The subsequent repeal of these provisions in England, if made, is of no importance upon the historical question of the origin of the New England practice of default.*

[* The reporter is indebted to Hon. Albert S. Batchellor, of Littleton, editor of state papers, for the following observations upon the controverted question of the repeal of the Cutt and Cranfield codes, referred to in the opinion of the chief justice.]

The laws of New Hampshire enacted by the general assembly of the province by authority of the king's commission to John Cutt and others (1680–1682) were duly forwarded to the home government for examination and approval or repeal. "Such acts," the commission declares, . . . "shall stand and be in force until the pleasure of us, our heirs and successors, shall be known, whether the same laws . . . shall receive any change or confirmation, or be totally disallowed and discharged." 1 N. H. Prov. Laws (Batch. ed.) 6.

The commission of Cutt, the so-called Cutt laws, the Cranfield commission, the Cranfield instructions (six articles only), and the so-called Cranfield laws were preserved in the province and state archives. After repeated failures to discover any record evidence as to the repeal of the Cutt laws, excepting that published by Chalmers, the historian, at the time of the American Revolution (1780), a copy purporting to be the Cranfield instructions in full was exhumed some time in the month of April, 1906, by agents in London acting under the directions of the editor of state papers for this state.

The only signature to the instrument is the initials " C. R.", presumably *Carolus Rex*. The paper contains thirty-nine articles, exclusive of the introductory paragraph or preamble. The secretary of the province for about one year in that period (1692) was Thomas Davis. His record of the Cranfield instructions presents only six articles, corresponding to articles 15, 17, 18, 19, 22, and 34 of the original. This abridgement omits thirty-three articles,

The progress of the practice appears in the act of October 4, 1701 (13 Wm. III). "And in case the defendant in any suit, being duely served with process, and return thereof being made into the court where the same is returnable, do not appear by himself or attourney, his default shall be recorded and judgment be entered up against him thereupon." Prov. Laws 1696–1725, *p.* 21; Prov. Laws, *ed.* 1761, *p.* 7; 1 N. H. Prov. Laws (Batch. ed.) 702. This act, repealed by the queen in council November

---

including the clause which contains the repeal of the Cutt laws. 1 Bouton N. H. Prov. Papers 443; 1 N. H. Prov. Laws (Batch. ed.) 56.

Article 26 of the London copy of the instructions is as follows: "And whereas divers laws and orders made by the president councill and assembly of New Hampshire having been presented to us in our privy councill, we have judged the same unfit to be continued within our said province, you shall therefore, at the meeting of the assembly signify our royal will and pleasure, that all laws and orders made as aforesaid by vertue of our commission dated the 18th September 1679 be repealed and made voyd, as we do hereby repeal and annul the same, and you shall with the councill and assembly forthwith proceed to passe such other lawes as shall be more proper for the good government of the province under yor governmt." Colonial Entry Book, *vol.* 99, *p.* 147.

Chalmers' Political Annals of the Present United Colonies, published in London in 1780, stated (*vol.* 1, *p.* 492) that the Cutt laws were repealed by the king. This work reflected the *animus* of the party then in power in England toward the colonies. This hostility appears throughout the entire work, which was severely criticised by Belknap, in a preface to the last edition of his History of New Hampshire, as being unreliable as well as partisan. There is no reason to believe that any complete copy of the instructions has been accessible in America from 1692 to 1906. In the absence of the evidence contained in the full text, there was nothing in the local records to indicate the repeal of the Cutt laws. From such an utterance as that of Judge *Parker* in *Nudd* v. *Hobbs*, 17 N. H. 524, 527, it may be inferred that the repeal of the Cutt laws was not known by the courts in the early part of the state period following the Revolution. In the 1771 edition of the province laws the Cutt commission was reproduced and has place as the first document in the volume. Gov. John Wentworth, in an address to the general assembly (July 18, 1775), printed in 7 Bouton's Province Papers 385, refers to the Cutt commission and laws as the groundwork of the constitution of the province. Chief Justice *Smith* and his contemporaries also regarded these laws as an important and permanent element in the jurisprudence of the province and state. *Thompson* v. *Bennett*, Smith N. H. 327, 337; *Ib.*, 503, 529 note 2; 1 N. H. Bar Ass'n Proc. 676.

The restoration to the state archives of the full text of the Cranfield instructions will supply an important missing link in its documentary history, and will at the same time set at rest the controversy over the contemporary disposition of the Cutt laws in the home government. It may be possible that the reproduction of the full text of the Cranfield instructions will hereafter give rise to practical questions similar to those under consideration in *Van Winkle* v. *Constantine*, 10 N. Y. 422.

19, 1706, was repealed by the state legislature June 20, 1792. Laws, *ed.* 1797, *p.* 441. Its place was taken by the act of February 9, 1791, which finally took effect September 15, 1792. *Ib., pp.* 85, 437, 440, 441. The latter act contained the provision in the following language: " When any defendant shall be duly served with process, and return thereof shall be duly made unto the justice, or unto the court to which the same is returnable, and such defendant shall not appear, by himself or his attorney, his default shall be recorded and the charge in the declaration shall be taken and deemed to be true, and the justice, and the courts respectively, shall thereupon give judgment for such damages as they shall find upon inquiry that the plaintiff hath sustained." Laws, *ed.* 1797, *p.* 87. This provision was re-enacted January 2, 1829 (Laws 1829, *c.* 44, *s.* 9; Laws, *ed.* 1830, *p.* 90, *s.* 9), and condensed in the Revised Statutes (*c.* 186, *s.* 3) as follows: " If any defendant on whom process has been duly served shall neglect to appear at the court to which the same is returned, his default shall be recorded and judgment shall be rendered against him for such damages as, upon inquiry, the plaintiff shall appear to have sustained," which is practically the present form of the statute. P. S., *c.* 222, *s.* 1.

The authority of the court in this jurisdiction to order a judgment by default is founded upon the statutes and common law of New England. Such authority is not to be found in decisions as to judgment by *nil dicit,* or the statutes or practice of other states, but " in the records of New England, in the decisions of courts." *Prop'rs of Cornish* v. *Kenrick,* Smith (N. H.) 270, 273. " The various methods of confessing judgment in use in the English practice, as by . . . *non sum informatus* and *nil dicit,* are not known with us. They are all merged in the simple method of defaulting," the only method of procuring judgment against him " when the defendant fails to appear, or having appeared, neglects to take the requisite steps, on his part, in the proceedings in the cause." Howe Mass. Pr. 266, 267. By statute (P. S., *c.* 227, *ss.* 5, 6), if either party neglects to appear before an auditor, or refuses to render an account, or to produce books or papers, or to answer on oath, the court—such refusal or neglect being certified by the auditor—are authorized to render judgment against the party, " as upon nonsuit or default." Such has been the law since the act of June 23, 1823. Laws, *ed.* 1830, *p.* 378. By the rules of court, in a similar situation in cases before referees the court orders judgment by default against the defendant, if in fault. Rule 54 (71 N. H. 684); Rule 67 (56 N. H. 593). It has been common practice for the court, in case of delay in the trial of cases before referees, to make an order for a trial before the next

term, or *nonsuit* or *default* as the case might be, and also in any case upon the plaintiff's motion to require the defendant, after appearance at the first term, to file an affidavit of defence under penalty of default and judgment.    As was said in *Holland* v. *Seaver*, 21 N. H. 386, 388, it is not the practice to grant attachments against the body to enforce the orders of court; "our orders are usually enforced by directing a party, in case of non-compliance, to be nonsuited or defaulted." In *Willson* v. *Willson*, 25 N. H. 229, 233, the record shows the action was "defaulted after being answered to." How the default was brought about does not appear.

An investigation of the early legislation of Massachusetts would doubtless disclose the models upon which were framed the New Hampshire acts which have been referred to.   See Laws and Liberties of Mass. (*ed.* 1660) 48; Ancient Charters and Laws of Mass. Bay 365; Wash. Jud. Hist. Mass. 69.   Such investigation has not been thought necessary, as it is expressly held in Massachusetts that a defendant who appeared at the first term may be defaulted for non-appearance at the second term, the court saying that a default of the defendant after appearance has always been held to be within a statute in substance the same as the New Hampshire act of February 9, 1791, above cited.   *Jarvis* v. *Blanchard*, 6 Mass. 4.   Also it is there held that a defendant who fails to appear when called upon a call of the docket may be defaulted, although an appearance had previously been entered in his behalf.   *Willey* v. *Durgin*, 118 Mass. 64, 69.   An entry of default for the defendant's non-appearance when the case is reached for trial appears to be matter of course.   *Hosmer* v. *Hoitt*, 161 Mass. 173.   It is plain that neither in this state nor in Massachusetts will a previous appearance or the filing of a plea prevent a judgment by default against a defendant who fails to comply with an order of the court, or who does not present himself for trial when the case is regularly reached.

In the case before the court, the action was specially set down for trial by the jury at the time in question.   The defendants had notice and were present by counsel.   The order as to the trial was a special rule for the case, within the power of the court to make. The defendants deliberately and intentionally refused to comply with the rule, and were defaulted in accordance with familiar practice.   The defendants' contention is based upon the proposition that after appearance by the defendant, plea filed, and issue joined, a judgment by default cannot be entered, and they cite numerous authorities to sustain this proposition.   1 Black Judg., *ss.* 79, 86.   This claim results from confounding the common-law judgment of default by *nihil dicit* with the New England judg-

ment of default for non-appearance or non-compliance with the orders and rules of court. It is obvious that a judgment for not pleading cannot be awarded against a defendant who has duly filed his pleadings. The authorities cited depend upon the practice and statutes of the jurisdictions in which they are found and cannot control here. If they were of controlling force, it might be necessary to consider the view taken in some states, that it is necessary not only for the defendant to file a plea, but to appear and sustain it (1 Black Judg., *s.* 86, note), and the proposition generally held, that the withdrawal of the defendant's appearance, found in this case from competent evidence to have been made, operates as a withdrawal of the defendant's pleadings and authorizes a judgment of default by *nihil dicit.* 3 Cyc. 530.

But assuming the defendants' claim as to the law to be sound, there was no error in the order of default, because as matter of fact no plea or answer of the defendants was on file or had ever been. The 8th rule of court (71 N. H. 678), upon which the defendants rely, does not file the general issue for them. In this respect it is negative, instead of positive, in effect. It provides: "All special pleas and brief statements shall be filed with the clerk of the court within ninety days from the commencement of the term when the action is entered; otherwise, the cause shall be tried upon the general issue. And no special plea or brief statement shall be received otherwise than as aforesaid, but upon payment of all costs occasioned by the neglect to file the same in season." Under this rule, the defendants, having filed no plea up to the day of the trial (more than ninety days after the entry of the action), could file as of right the general issue only. But the court had power, upon motion, upon terms to permit them to file some other plea. An order to strike from the files the plea of the general issue, which had never been filed, would not be necessary to authorize the granting of leave to plead specially. The failure to plead specially was not a plea of the general issue, nor equivalent thereto, at least until the trial had actually begun. No plea had been filed and issue had not been joined. If the parties had gone to trial without a written plea or formal joinder of issue, the trial would necessarily have been upon the general issue. Such plea and joinder of issue would have resulted from the action of both parties in commencing the trial without written pleadings, and not from the mere failure of the defendant to file any plea. Upon the facts, the case presented is of an appearance upon the docket by attorney without plea or answer, and no appearance when the case was reached for trial. No authorities have been discovered holding that in such situation a judgment by default was not entirely regular.

After verdict counsel moved for "leave to appear in said cause and represent the defendant in any further proceedings which may be properly had therein; and if, in the opinion of the court, the defendant is in default, it now moves that said default be opened," and that the counsel making the motion have leave to appear for that purpose. The court appointed a hearing on the motion and after hearing denied the motion. To such order no exception was taken. If exceptionable, nothing is before this court. It is true the defendants were not in court in the main case, but counsel were recognized as representing the defendants in the making of the motion, and the statute gave them full authority, if "aggrieved by the ruling, direction, or judgment of the superior court, seasonably objecting," to "allege exceptions thereto in writing," and have them transferred to this court. Laws 1901, *c.* 78, *s.* 5. But the motion and order present no additional question of law. The only purpose disclosed in the motion was to open the default. It was substantially a motion for a new trial. So far as such motion was grounded upon accident, mistake, or misfortune, the question was one of fact for the decision of the superior court. *Ela* v. *Ela,* 72 N. H. 216. So far as it was grounded upon any mistake of law in the order of default, the defendants have had full consideration of that question in the present proceeding. If the defendants desired to appear for any other purpose, it was incumbent upon them to make their purpose and the legal ground upon which they based their right to appear known to the court.

*Exceptions overruled: petition dismissed.*

BINGHAM, J., did not sit: the others concurred.