## MASCOT v. RUDMAN.

District Court, D. New Hampshire.
Jan. 23, 1940.

As Amended on Rehearing March 12, 1941.

Abraham Kauffman and Ora Craig, both of Concord, N. H., for complainant.

Ivory Eaton, of Nashua, N. H., for defendant.

MORRIS, District Judge.

The subject matter of this suit originates in a contract for the exchange of two parcels of real estate located in the City of Boston. The contract is dated March 23, 1929, and by its terms Abraham Rudman agreed to convey to Morris Mascot certain real estate situated on Massachusetts Avenue, numbered 390–400 the same containing thirty-seven apartments with four stores and one shop in the semi-basement. In part payment therefor Morris Mascot conveyed to Abraham Rudman a certain parcel of land with the buildings thereon situated at 11 James Street in said City of Boston subject to a mortgage of $19,500. The valuation placed upon the Massachusetts Avenue property was $109,910 and on the James Street property $33,000. The Massachusetts Avenue property was subject to two mortgages to the Home Savings Bank of Boston aggregating $60,-000, the payment of which Mascot assumed. The balance of the purchase price was secured by Mascot who gave a note to Rudman in the sum of $32,500 secured by a mortgage on the Massachusetts Avenue property and a personal property mortgage on certain personal property located in the building and by payment in cash of $2,900. Mascot assumed the payment of the 1928 and 1929 taxes. The trade was consummated by the delivery of the deeds May 1, 1929.

Mascot entered into possession and collected the rents but trouble arose in October, 1929, because of Mascot's failure to pay the taxes in accordance with the agreement. On November 30, 1929, Abraham Rudman assigned his real estate mortgage to Edward G. Rudman, the defendant in this action. On or about the same date the defendant took possession of the premises with the apparent intent to foreclose his mortgage. Negotiations followed resulting in the agreement of December 4, 1929, the alleged breach of which furnished the foundation for this action. Said agreement reads as follows:

"I, Edward G. Rudman of Brookline in the County of Norfolk and Commonwealth of Massachusetts, assignee of a mortgage from Morris Mascot to Abraham H. Rudman, dated May 1st, 1929, and recorded in Suffolk Registry of Deeds in Book 5097, Page 326, do hereby agree that upon delivery to me of a certain bond guaranteeing the payment of the taxes assessed for 1929 on the property described in said mortgages that I will not foreclose on the property described in said mortgage for non-payment of the above mentioned taxes, and will not foreclose up to and including October 1st, 1930, except for a breach of the first mortgage, and for any breach by failure to pay interest or prin-

cipal as specified in the terms of the above mentioned mortgage, or for failure to keep the premises above mentioned, insured in the sum of Eighty Thousand Dollars ($80,000.00).

"Dated at Boston Mass., this 4th day of December, 1929.

"Edward G. Rudman"

The agreement is acknowledged before Maurice A. Rudman, Notary Public.

As a surety that Mascot would carry out the terms of the agreement to pay the taxes he gave a bond dated December 4, 1929, in the sum of $3,500 but the bond was no protection against a tax sale by the City of Boston.

Notwithstanding the above agreement the defendant on May 15, 1930, purporting to act under the third mortgage, entered upon the premises for the purpose of foreclosure claiming a breach of the conditions of the agreement of December 4, 1929, and the terms of the original mortgage. The breaches relied upon were failure to pay the taxes assessed as of April 1, 1929, and interest on prior mortgage obligations. On July 25, 1930, defendant's attorneys wrote a letter to Earl Jacobs, attorney for Morris Mascot, that the foreclosure sale of the Massachusetts Avenue property would be held August 16, 1930, and asking Jacobs to notify Mascot which he apparently did because Mascot attended the sale. The property was bid off by Edward G. Rudman for the sum of $10,000. On August 26, the property included in the personal property mortgage was sold and bid off to Edward Rudman for the sum of $1,000, due notice of the sale having been given.

The present plaintiff, Harry Mascot, claims as assignee of Morris Mascot that the foreclosure was premature; that the payment of taxes to the City of Boston had been secured by the bond and that the interest on the bank mortgage was not due on the date when Edward Rudman took possession of the premises on Massachusetts Avenue.

On September 10, 1930, Morris Mascot was adjudged a bankrupt on his own voluntary petition. The bankrupt listed in his schedules the Massachusetts Avenue property subject to two mortgages aggregating $60,000 to the Home Savings Bank and a third mortgage of $30,000 to Abraham Rudman, the property being in possession of the third mortgagee. No personal property was listed. He did not state that there was any equity in the property either real or personal. The bankrupt was examined by the Referee and Frederick G. Kenneally was appointed trustee. The only asset claimed by Mascot was a right of action against Abraham and Edward Rudman for a premature foreclosure and violation of the agreement of December 4, 1929. The trustee after investigating the matter and consulting with the referee was authorized to sell the assets of the bankrupt and did sell the same to Mary Connelly. She testified that she did not remember any of the conversation regarding the assignment as it was a matter of office routine. She in turn, on January 26, 1931, assigned the same to Harry Mascot for a consideration of $1.

An examination of the Morris Mascot bankruptcy schedules shows liabilities of $106,918.46. There were no assets scheduled except the Massachusetts Avenue property valued at $90,000, which, as above stated, was said to be in possession of the third mortgagee. There being no assets outside the mortgaged real estate no dividend was paid and for some reason the bankrupt was refused a discharge. The Lynn Cooperative Bank was listed as a secured creditor in the sum of $12,000 on other property and the Morris Plan Bank for $370. Edward G. Rudman filed his mortgage claim as a secured debt against the bankrupt.

May 20, 1930, Edward G. Rudman, brought suit against Morris Mascot as principal and Yetta Mascot, Walter I. Mascot and Samuel Mascot as sureties on the bond of December 4, 1929, and recovered judgment thereon for the penal sum of $3,500. This judgment rendered December 7, 1936, is outstanding and unsatisfied.

Plaintiff claims that on May 15, 1930, when Edward Rudman took possession of the Massachusetts Avenue property there had been no breach of the agreement of December 4, 1929. This brings us to an examination of the evidence bearing upon the alleged breaches of the contract.

█ I find that the Home Savings Bank wrote Maurice Rudman, then in charge of the property for his brother Edward, asking for payment of $900 on interest due July 6, 1930. This was paid by Rudman July 3, 1930. I cannot find that any interest was due on the bank's $60,000 mortgages on May 15, 1930, when Rudman took

possession of the Massachusetts Avenue property but the payment became due July 6, 1930, which was prior to the foreclosure sale August 16, 1930. Morris Mascot in answer to a question as to whether he paid the July 6, 1930, interest on the $60,000 mortgages to the Home Savings Bank said: "I wasn't in possession. Why should I make payments?" On July 22, 1930, the Home Savings Bank wrote a letter to Abraham Rudman asking for a reduction of the mortgage and asking for a payment of $10,000. On May 1, 1930, a payment of $625 and interest of $457.13 became due on the third mortgage. On that date Morris Mascot gave Rudman a check for $1,082.13. This check was endorsed "Abraham Rudman, by his attorney, Maurice A. Rudman." The check was protested and returned unpaid. On May 5, 1930, a check for $882.13 was drawn by Morris Mascot to Abraham Rudman and on May 9 another check in the sum of $200 was drawn to Rudman the two taking the place of the protested one. Both these checks were endorsed "For deposit only to account of A. H. Rudman." It does not appear who endorsed them. Maurice Rudman, who was attending to his father's business, testified that he never saw the checks before; that he never received the checks and that the endorsements were not in the handwriting of his father or any member of his family. Both checks were drawn on the Sagamore Trust Company of Lynn, Mass., bore the stamp of the Federal Reserve Bank and appear to have been paid.

■ I find that it is more probable than otherwise that the two checks were endorsed by someone authorized by the Rudman family and the proceeds went into the Abraham Rudman account.

Another payment came due on the third mortgage note August 1, 1930, which was not paid by Mascot. When asked if he made the payment, his answer was, "No. Why should I do it?"

The agreement of December 4, 1929, provided that Mascot should keep the property insured in the sum of $80,000. Insurance premiums were due and unpaid. The excuse given by Mascot was that the policies were in the possession of the Home Savings Bank and that he had no notice that any premiums were due. Mascot admitted that he had paid no insurance since Rudman took possession of the premises May 15, 1930.

■ The agreement of December 4, 1929, provided for insurance on the property in the amount of $80,000. There was testimony to the effect that Mascot when he took possession of the property and the deeds passed made some adjustments of the insurance policies. There was also testimony that during the time Mascot was in possession he renewed two insurance policies one for $135 and another for $147. He testified that when Rudman took possession the insurance was paid in advance in the amount of $472. I cannot find this to be so as Rudman contacted the insurance broker and found that a large sum was due for premiums, which the broker demanded. Rudman instead of paying the premiums cancelled the policies and took new insurance to protect his interest until he conveyed the premises to Donnelly November 5, 1930. The policies were written in the name of Morris Mascot and so far as appears afforded no protection to the mortgagee. The burden was on the complainant to establish the amount of insurance in force and that the same provided protection to the third mortgagee. No policies were introduced in evidence. The complainant failed to show compliance with the agreement of December 4, 1929.

■ The bond which was given December 4, 1929, provided for the payment of $2,000 taxes on or before May 1, 1930, and the balance thereafter, and before the property was sold for non-payment of said taxes but the bond proved to be of no protection as the $2,000 was not paid in accordance with its terms. Apparently Mascot did not pay the taxes because at a later date suit was brought against Mascot on the bond and a judgment obtained as above set forth. The failure to pay the taxes was not only a breach of the bond but a breach of the agreement of December 4, 1929, and of the original mortgage from Morris Mascot to Abraham Rudman, a condition of which was that the mortgagor should pay all taxes and keep the premises insured for the protection of the mortgagee.

■ Sometime in May, 1930, Morris Mascot called on Rudman and complained that he was being pursued by his creditors on account of his Lynn property and must do something to get out from under and asked Rudman if he would be willing to take the property from him and, "when I get through with my bankruptcy give it back to me?" Rudman testified that he

told Mascot that he had no legal right to do this but notwithstanding the conversation Mascot handed over the rent book to Rudman which has been in his control ever since. The allegation in plaintiff's complaint that Morris Mascot's bankruptcy resulted from the fact that Rudman took possession of the property May 15, 1930, is not supported by the evidence.

Morris Mascot testified that he purchased personal property and expended in new fittings for the apartment and the restaurant about $1,500 and that this was not included in the Rudman personal mortgage. When Rudman took possession of the property the new furnishings were in the building and just what became of them is not disclosed. Some were under attachment in suits against Mascot and both Mascot and the attaching sheriff were asked to remove Mascot's property. An accountant employed by the defendant examined Rudman's account from May 12, 1930, to Aug. 15, 1930, and found that the income of the property was $4,365.98 and the expense during the same period $5,541.-74. This included expenses for repairs, heating and lighting, water rents, taxes, etc. While ordinarily the rents were collected by the janitor, plaintiff's counsel call attention to the fact that this account is not accurate because not all of the rent was collected by the janitor, some if it being paid directly to the Rudman family and not deposited in the bank.

■ I cannot find, however, that the income of the property exceeded the expenditures during the period between the time possession was taken by the mortgagee and the time when the property was sold.

When Rudman sold the Massachusetts Avenue property to Donnelly he received in payment therefor two mortgages, one for $14,225 and one for $4,000. He testified that all he got out of the $14,225 mortgage was $900 and that the $4,000 mortgage went to the broker for his commission. Donnelly assumed the bank mortgage.

It is interesting and important to trace the various steps through which the plaintiff's claim has passed in the Massachusetts courts.

■ On September 9, 1930, Morris Mascot brought a suit founded on a breach of the contract of December 4, 1929, against Edward G. Rudman and Abraham H. Rudman in the Essex County Superior Court in Massachusetts. In this action the complainant was allowed to substitute himself for party plaintiff on April 24, 1935. According to the Clerk's records this action was non-suited for failure to appear at the calling of the list on September 24, 1935, and on September 30th judgment was entered for the defendants. It will be noticed that this suit was brought the day before Morris Mascot was adjudged a bankrupt. The trustee in bankruptcy did not enter an appearance to prosecute this suit. The judgment for the defendants still remains on the records of the Massachusetts court and should be a bar to the prosecution of any future action for the same cause, although it does not appear to be so treated in subsequent proceedings. Hutchinson v. Manchester Street Railway, 73 N.H. 271, 60 A. 1011.

On October 14, 1932, an action in tort was brought by Morris Mascot against Abraham and Edward Rudman. In this action the complainant herein was not allowed to substitute himself as party plaintiff. The case was submitted to the jury on the question of whether there had been an assignment by the trustee in bankruptcy of Morris Mascot's claim against the defendants. The jury found that the claim had been assigned and thereupon judgment was entered for the defendants February 12, 1936.

On March 30, 1936, a third suit was brought in the Boston Municipal Court by Harry Mascot against the defendants, service being good on Edward Rudman alone and a motion to quash was allowed on the ground of variance between the writ and the summons. This action was dismissed.

On May 18, 1937, a fourth suit was brought by Harry Mascot against Abraham Rudman founded upon the agreement of December 4, 1929. In this action there was a verdict for the defendant on the ground that he, Abraham Rudman, was not the proper party he having assigned his interest in third mortgage prior to the cause of action.

An examination of the pleadings discloses that the plaintiff alleged that the assignment to Edward Rudman was used as a subterfuge to cover up the acts of the defendant Abraham Rudman who was the real party in interest, and who, in fact, was the moving party in the foreclosure of the third mortgage on the Massachusetts Avenue property. The defendant's answer was that he was not a party to the agreement

of December 4, 1929, and hence was entitled to a verdict in his favor.

Another action was brought in the municipal court which was a writ of review. Morris Mascot attempted to act as attorney for his son and this suit was dismissed because it was not in proper form and the Court refused to entertain it.

Counsel for the plaintiff in their argument claim damages in the sum of $115,000 on the theory that the foreclosure proceedings was a breach of the agreement of December 4, 1929, and that the measure of damages is the value of the property of which they have been deprived.

■ I hold that the rule of damages, if any, is the value of the land at the time of the sale less the amount of the mortgage debt. This is the measure of damages where the mortgage is foreclosed in violation of an agreement to extend the time of payment. This brings us to a consideration of the testimony bearing upon the value of the property foreclosed and what, if any interest Morris Mascot had in it.

When Rudman took possession of the property on May 15, 1929, Mascot took no steps to recover possession and let the property be sold at a foreclosure sale. He seemed to have lost interest in it and within a month filed a voluntary petition in bankruptcy. He had no assets of a personal nature and scheduled the Massachusetts Avenue property at $90,000. This was subject to a mortgage to the bank for $60,000 on which there was approximately about $1,000 interest due and unpaid. It was also subject to a mortgage to Rudman for $30,000 on which there was a payment and interest due. The Referee had before him the facts relating to the Massachusetts Avenue property and he knew of the agreement not to foreclose. The trustee in bankruptcy must have studied the situation and came to the conclusion that no assets would be obtained by prosecution of the suit against Rudman and he practically abandoned the quest. After consulting the Referee he sold any right of the bankrupt to maintain an action for the recovery of assets without even the formality of notifying creditors of such sale in accordance with Section 60, sub. a of the Bankruptcy Act of 1898, 11 U.S.C.A. § 96, sub. a. The trustee assigned all assets in the bankruptcy estate to Mary Connelly and she in turn for a consideration of one dollar assigned her rights to the present complainant.

If the Referee and trustee had believed there was any equity for the bankrupt in the Massachusetts Avenue property it was their duty to take such steps as necessary to realize on such equity. The fact that they did not at a time when the facts were fresh in the minds of the parties is strong evidence that Mascot had no equity in the property.

There is other evidence in the case which leads to the same conclusion. The fact that the parties did not consider the property worth the amount of the encumbrances is borne out by the testimony to the effect that the Rudmans offered to sell their mortgage, which at the time was $30,475, for $18,000, and this offer was not accepted by Mascot.

Carl M. Spencer, president of the Home Savings Bank, testified that he appraised the property in 1930 at $92,000 which he said was too high.

About the time of the foreclosure the bank insisted that if their mortgage was to continue on the property it must be reduced $10,000.

When Rudman sold the property to Donnelly he took a mortgage for $14,000 and was able to realize only about $900 on it.

■ Four actions have been started in the Massachusetts courts by as many different attorneys and in none of them has there been any order excepting "Judgment for the defendants." The cause of action is about eleven years old. It has had a very checkered career and while it does not appear that there was ever any actual trial on the facts, I am convinced that if there had been any merit in the case some one of the various attorneys employed by the complainant would have prosecuted the action to its end. The claim is stale and I find as a fact that the present complainant took nothing but an empty claim by the assignment from Mary E. Connelly.

Even if I were to find that the foreclosure of the mortgage by Edward G. Rudman was premature and a breach of the agreement of December 4, 1929, Morris Mascot suffered no damage thereby and the assignment to the present complainant created no right to recover damages that Morris Mascot himself did not have.

From the evidence I find that the original appraisal of $109,910 was far in excess of the value of the property and that its true value did not exceed $85,000. It fol-

lows that Morris Mascot's equity in the property on the date of his bankruptcy was of no value and I so find.

Considering Morris Mascot's financial condition, the fact that he failed to show that he had kept the property insured for the protection of the third mortgagee and the fact that his failure to comply with the terms of his bond relates back to the agreement of December 4, 1929, and leaves the matter as though no bond had been given; and the fact that the agreement of December 4, 1929, as well as the original mortgage provided for the payment of the taxes, I hold that the defendant was justified in taking possession of the premises and foreclosing the mortgage as he did and that it was not a breach of the above mentioned agreement and no damages resulted therefrom.

Verdict for the defendant.