Carroll,  }
June 30, 1903. }

## HORNE & a. v. HUTCHINS & a.

A deed of a mill privilege which does not expressly convey any specific right
in a reservoir upon which the mill is dependent for power, but which by
legal intendment and construction entitles the grantee to a use of the water
so far as reasonably necessary to the beneficial enjoyment of his purchase,
cannot be extended by implication so as to include additional rights arising
from improvements made in the reservoir by the grantor subsequently to
the date of the conveyance.

A mill-owner entitled to the use of water from a reservoir as it existed at the
date of his purchase has an equivalent right in the reservoir after improve-
ments thereon which increase its capacity.

The exclusion of material evidence does not constitute reversible error, if the
party by whom it was offered was not prejudiced by the ruling.

BILL IN EQUITY. Hearing before *Young*, J., at the March term,
1902, of the superior court, to determine what orders were neces-
sary to secure to the plaintiffs their rights in the reservoir, as re-
quired by the former opinion in this case. *Horne* v. *Hutchins*, 71
N. H. 117. The plaintiffs claimed that they were entitled to an
equalized flow from the reservoir as it now exists. The defend-
ants contended that the plaintiffs' right to an equalized flow was
limited to and governed by the drainage rights the Winnipiscogee
Lake Cotton and Woolen Manufacturing Company owned in the
reservoir at the date of the Goodwin deed, November 29, 1854.

Prior to the date of that deed, the Lake Company had purchased
the reservoir dam, the mill privileges between Crooked pond and
the lake, and the right to deepen Whitten river as against one of the
landowners on that river, and made a plan showing the work they
proposed to do to deepen the river and to increase the capacity of
the ponds. The building of the present dam at A was completed
by the Lake Company about November 29, 1854, but at that date
the Lake Company had not purchased the right to drain all the
lands adjoining Whitten river and Smith's and Crooked ponds.
Subsequently they purchased these rights from thirty-seven abut-
ters, paying therefor about $10,000. It was admitted that these
thirty-seven abutters included all whose lands were drained by
the ponds, except two; and as against these, it was found that the
Lake Company had continuously exercised the right to drain their
lands, under a claim of right and without objection, since 1855.
In the summer of 1855, the Lake Company deepened Whitten
river, connecting Smith's and Crooked ponds, in accordance with
their original plan. Prior to the improvement of these ponds and

the building of the new dam, there was only enough water in the reservoir to run the mills at dam C up to about the middle of June; but since then there has usually been enough to run all the machinery at that dam that the owners had occasion to use, throughout the year.

When Goodwin purchased privilege C the mills and dam were old, out of repair, and nearly worthless. His grantees removed the old structures and erected new ones, put in more machinery, and added other wheels from time to time without objection from the Lake Company. The old reservoir dam was about five feet high and about five feet above the bed of Whitten river, and the parties were accustomed to draw down Smith's and Crooked ponds four feet below the top of the dam. November 29, 1854, it was practicable with the new dam to draw down Crooked pond about nine feet (but the company did not then own that right), and Smith's pond down about the same as with the old dam. The new or present dam is eleven feet and nine inches high, and, at this time, it is practicable to draw down these ponds about eight feet below the top of the dam.

The court construed the Goodwin deed, so far as it was a question of fact, and held so far as it was a question of law, that both parties to the conveyance expected that Goodwin would have the full benefit of the proposed reservoir, subject to the limitations in the deed in respect to mills on the lower rivers.

The plaintiffs offered to show that the canal which ran the privileges at B was abandoned by the acts of the Lake Company in 1854, or by their predecessors, if any ever existed there that would interfere in any way with the reservoir, so far as they would interfere with the reservoir. They also offered the title deeds of the privilege at dam C from 1771 to 1854, for the purpose of showing title to the stream from Smith's pond to the lake by grant, and that the privileges on the stream, including the right to make improvements in the stream, were appurtenant and a part of the privileges at dam C. They also offered the record title of the privilege at B from its creation, for the purpose of showing that that privilege, prior to the date of the Goodwin deed, had no rights in the reservoir appertaining to it, and that such rights were appurtenant to C before the union of title in 1854. This evidence was excluded, subject to the plaintiffs' exception.

*Leslie P. Snow* and *Sewall W. Abbott*, for the plaintiffs.

*James A. Edgerly* and *Arthur L. Foote*, for the defendants.

BINGHAM, J. The deed of November 29, 1854, from the Lake Company to Elisha Goodwin, has been construed by this court.

*Horne* v. *Hutchins*, 71 N. H. 117. In that case it was found as a fact that no rights in the reservoir had been acquired for the benefit of privilege C by the conduct of the parties subsequent to the execution of the deed; and the construction placed upon the deed was, in substance, that while it did not in express terms convey to the plaintiffs' grantor any specific rights in the reservoir at dam A, yet by reasonable intendment and construction "the grant of the 'right to use the water-power and mill privilege on said premises' had reference to the water-power and mill privilege in their integrity, including . . . the use of the reservoir upon which they were and for seventy-four years had been wholly dependent"; that whatever right in the reservoir was acquired by the grantee under the grant "passed, not because such right belonged to privilege C by prescription, . . . but because it had been previously used in connection with and was reasonably necessary to the beneficial enjoyment of privilege C, and because 'the law conclusively presumes it to have been the intention of the parties that the grantee should enjoy beneficially the subject of the grant'"; that "while property conveyed passes with all the incidents then rightfully belonging to it, or actually and usually enjoyed with it, . . . without any specification of them, and without the usual phrase, 'with all the privileges and appurtenances to the same belonging,' such incidents pass by implication only 'so far as they are necessary to the full benefit and perfect enjoyment of the property' expressly granted"; that "the privileges which pass by a grant . . . will depend upon the circumstances and conditions of the property at the time" of the grant; that although there was no "finding of previous abandonment" of privilege B, yet "in the absence of any structures at B at the date of the deed, by which to measure and apportion the rights in the reservoir as between privileges B and C, the grant must be understood" to convey, as appurtenant to privilege C, "the use of the reservoir so far as reasonably necessary to the beneficial enjoyment of that privilege," subject to the right specifically saved in behalf of the lower rivers; "that the right to the use of the reservoir beyond such reasonably necessary use by privilege C remained for any and all purposes in the grantor; and that in so far as the maintenance or management of the defendant's [present] dam at B interferes with the reasonably necessary use of the reservoir by C, it is unlawful and should be restrained and regulated in accordance with the relative rights of privileges C and B as already defined."

It having been found as a fact that no rights in the reservoir had become attached to privilege C by the conduct of the parties subsequent to the execution of the Goodwin deed, and it having been decided that the rights in the reservoir which passed with the

grant of C depended upon the conditions and circumstances surrounding the property at the date of the deed, and that by legal intendment only such rights therein passed as appurtenant to C as were then reasonably necessary to its beneficial enjoyment, subject to the limitation in favor of the lower rivers, the superior court was directed to "grant such further hearings and make such orders and decrees" as should be "necessary to a final determination of the rights of the parties, in conformity with" the construction placed upon the deed. A hearing was had in the superior court, and the presiding justice has reported some of the facts bearing upon the issues submitted. He has also found that "both parties to the conveyance expected that Goodwin would have the full benefit of the proposed reservoir, subject to the limitations in the deed in respect to mills on the lower rivers." This finding was not material to the issues. It would become material upon an application to reform the deed; but its reformation is not sought, and the parties necessary to such proceeding are not before the court. The deed of privilege C does not in express terms convey any rights as appurtenant to C, either in the old reservoir or in the proposed reservoir. At the date of the deed the Lake Company did not own the drainage rights necessary to the maintenance and beneficial enjoyment of the proposed reservoir; and as the deed did not expressly convey rights in such a reservoir, the grant of C will not be extended by implication so as to include them.

The doctrine of estoppel, contended for by the plaintiffs, is not applicable. The Lake Company, in the quitclaim deed to Goodwin, did not affirm a present ownership in the drainage rights which they subsequently acquired, or agree to convey such rights by their deed. *Logan* v. *Eaton*, 66 N. H. 575, and cases cited.

It is found, however, that previous to the improvements at dam A and the execution of the Goodwin deed, the parties were accustomed to draw down Smith's and Crooked ponds four feet below the top of the dam, which was about five feet in height and the same height above the bed of Whitten river, and that the reservoir then stored only enough water to run the machinery at dam C up to about the middle of June. In view of these findings and the absence of any structures at B, at the date of the Goodwin deed, by which to measure and apportion the rights in this reservoir as between privileges B and C, privilege C was entitled to the use of the reservoir as it existed prior to the improvements, so far as was reasonably necessary to its beneficial enjoyment, subject to the limitations of the deed in favor of the mills on the lower rivers; and the rights in that reservoir, beyond such reasonably necessary use by C, remained in the grantors and their successors in title. And, as the new dam did not raise the height of the water in the

reservoir, but simply rendered it possible, after the channels of the streams were deepened, to draw the waters of the ponds forming the reservoirs down four or five feet lower, it should be decreed that privilege C has such a right in the use of the waters of the new reservoir as would be equivalent to its right in the use of the waters of the old reservoir, viz., the right to the reasonably necessary use of the first four feet of water, reckoning from the top of the dam, subject to the limitations in favor of the mills on the lower rivers.

When the operation of the mills at C reasonably requires the use of the whole of the first four feet of water to run them during the day, and the raising of the gates at A, for the purpose of drawing water to operate the defendants' mill at B at night or on Sundays, would so lower the water and retard the filling of the reservoir as to interfere with the reasonable enjoyment of privilege C as herein defined, such use would be unlawful and should be restrained.

While the owners of C cannot require the owners of A to draw down the water below the first four feet, for use at C, the owners of A cannot make use of the water, either above or below the four-foot point, so as to interfere with the reasonable use of the first four feet of water by C, except for the mills on the lower rivers.

Whether the maintenance or management of the defendants'' present dam at B deprives privilege C of its right in the reasonably necessary use of the reservoir, as it existed prior to the reconstruction of dam A, is not found. If upon a further hearing its maintenance or management should be found to have that effect, such further orders should be made as the situation may demand.

In view of the finding, that prior to the improvements at dam A and the execution of the Goodwin deed the parties were accustomed to draw down Smith's and Crooked ponds four feet below the top of the dam, and that the reservoir then stored only enough water to run the machinery at dam C up to about the middle of June, and in view of the construction placed upon the deed, we are unable to see how the evidence offered by the plaintiffs, which was rejected, if material and found to be true, would in any way increase their rights in the reservoir beyond what it is herein held they have the right to. The plaintiffs therefore were not prejudiced by the exclusion of the evidence.

*Exceptions to evidence overruled : case discharged.*

All concurred.

After the filing of the foregoing opinion on April 7, 1903, the plaintiffs moved for a rehearing upon the question of their rights in the reservoir at dam A, by reason of the estoppel of the defendant Hutchins and his predecessors in title by their conduct since 1854.

*Leslie P. Snow* and *Sewall W. Abbott*, for the plaintiffs.

*James A. Edgerly* and *Arthur L. Foote*, for the defendants.

REMICK, J. The plaintiffs now contend that the defendants are estopped by conduct to set up any right in the reservoir, except to control it for the use of the mills upon the lower rivers; and certain findings of the referee upon the issue of prescriptive right are relied upon to support this contention.

It is conceded that the claim now made was not presented or tried before the referee. If it had been, the defendants might have disproved it by evidence irrelevant and incompetent upon the issues actually tried. Furthermore, the findings of the referee, taken as a whole, are quite as susceptible of a construction against the plaintiffs' present contention as the reverse.

Whether justice requires that the plaintiffs should have a new trial for the purpose of presenting the question now raised, is a matter for the consideration of the superior court.

*Motion for rehearing denied.*

All concurred.