Carroll, ⎱
June 6, 1905. ⎰

## Berry & a. v. Hutchins & a.

If the reservoir right appurtenant to a water privilege is common to several mills, an owner entitled to a preferential use of the water is bound to exercise the right reasonably, in view of the interests of others who are dependent upon the same source of power.

Where two persons own rights in a reservoir for supplying water-power to mill privileges upon its outlet,—the right of one being to the use of that portion of water that is above a horizontal plane four feet below the top of the reservoir dam, and the right of the other being to the use of the portion of water below that plane,—the rights are to be enjoyed, not by limiting the drafts of water from the reservoir by reference to the plane, but by treating the water of the reservoir ·as common, and apportioning to each owner the use of the quantity of water which pertains to his right.

Where a deed of a tract of land with mills thereon conveys the use of a reservoir so far as required for the beneficial enjoyment of the granted premises, a reserved right to detain or discharge the water for the benefit of mills on lower rivers cannot be exercised arbitrarily, but is limited by the reasonable necessities of the mills for whose advantage the reservation was made.

Bill in Equity, to determine the orders necessary to secure the respective rights of the parties in the reservoir formed by the dam at the outlet of Crooked pond, according to the decisions in *Horne* v. *Hutchins*, 71 N. H. 117, and 72 N. H. 211. Transferred from the June term, 1904, of the superior court, by *Wallace*, C. J.

The plaintiffs own the Horne water privilege and the sawmill, and the defendant Hutchins owns the gristmill, the leather-board mill, and the water privilege at dam B, mentioned in the above named cases. All deeds and papers which were parts of those cases, and of the cases reported in 71 N. H. 128 and 72 N. H. 77, are made parts of this case.

*Leslie P. Snow* and *Sewall W. Abbott*, for the plaintiffs.

*James A. Edgerly* and *Arthur L. Foote*, for Hutchins.

*Streeter & Hollis*, for the Concord Electric Company and other defendant corporations owning water-powers upon the Merrimack river.

Chase, J. The description of the property conveyed by the deed, Winnipiseogee Lake Cotton and Woolen Manufacturing Company to Elisha Goodwin, dated November 29, 1854, construed

in *Horne* v. *Hutchins*, 71 N. H. 117, reads as follows: "A tract of
land situated in said Wolfeborough, containing one acre more or
less, with the gristmill and sawmill standing thereon, . . .
together with the following described right or privilege in the use
of the water, to wit, the right to use the water-power and mill
privilege on said premises at such times as said company shall not
consider the same as interfering with the use of Smith's pond
above said premises as reservoirs for the supply of water for mills
anywhere upon the Winnipiseogee and Merrimack rivers, which
right and use said company do fully reserve and do not convey,
the said company having the right to detain and hold back or to
discharge the water of said ponds at such times as they may think
proper for the advantageous use of said reservoir." It was held
in that case that "the right to use the water-power and mill privi-
lege" at the dam on the granted premises (designated in this
and the prior cases as dam C) "conveyed, subject to the right
specifically saved in behalf of the lower rivers, the use of the res-
ervoir so far as reasonably necessary to the beneficial enjoyment
of privilege C; that the right to the use of the reservoir beyond
such reasonably necessary use by privilege C remained for any
and all purposes in the grantors"; and, further, that "as between
privileges B and C, the grant must be understood as conveying to
privilege C the use of the reservoir so far as reasonably necessary
to the beneficial enjoyment of that privilege." *Ib.* 125, 126. The
case was discharged, with the suggestion that the superior court
should make such order and decrees as should be found necessary
to a final determination of the rights of the parties in conformity
with the views expressed in the opinion.

After a further consideration by the superior court, the case
was again transferred to this court, when it was held that the res-
ervoir of which the mills at dam C are entitled to the beneficial
enjoyment was the reservoir as it existed at the date of the Good-
win deed. At that time only four feet in depth of water could be
drawn from it when full. Subsequently, the bed of the river con-
necting Smith and Crooked ponds, and the outlet of the latter
pond, were lowered by the Lake Company so that four or five feet
additional could be drawn. Accordingly, it was held that "privi-
lege C has such a right in the use of the waters of the new reservoir
as would be equivalent to its right in the use of the waters of the old
reservoir, viz., the right to the reasonably necessary use of the first
four feet of water, reckoning from the top of the dam, subject to
the limitations in favor of the mills on the lower rivers." In the
course of the opinion it was said: "While the owners of C can-
not require the owners of A to draw down the water below the
first four feet, for use at C, the owners of A cannot make use of

the water, either above or below the four-foot point, so as to interfere with the reasonable use of the first four feet of water by C, except for the mills on the lower rivers." 72 N. H. 214, 215.

Upon a further effort to define and regulate the use of the water in the reservoir, in accordance with the rights of the parties as above determined, the superior court made the following findings and order in the present case, subject to an exception by the defendant Hutchins: The plaintiffs "are entitled to have the water discharged from the reservoir dam during ten hours of each working day, in sufficient quantity to keep dam C as nearly full as possible, so long as it can be done by not using more than the daily uniform or average flow of water from the first four feet of the reservoir. When the waters of the reservoir fall more than four feet below the top of the reservoir dam, the said Berrys are entitled to have said reservoir dam closed until the water shall accumulate in the reservoir in sufficient quantity to run the mills at dam C for an economical period. This is a reasonable and advantageous use of the first four feet of the water of the reservoir for all of the mills on Smith's river, considering their relative rights, for the Lake Company, and for the mills on the Winnipiseogee and Merrimack rivers, who are parties to this case, as it equalizes the flow of water from the first four feet of the reservoir and gives to all its daily uniform or average flow. The daily uniform or average flow of the first four feet of the reservoir, basing it upon the average year, is 130 cubic feet of water per second for ten hours per day; and the defendant Hutchins will hereafter discharge the water in accordance with this order until the same is modified or changed." The court further finds that a draft of water to that extent "has in the past, and will in the future, draw the water down to the four-foot point during portions of some years"; but, "taking one year with another," such draft or flow "will give all the parties the most water-power from the first four feet of the reservoir, and is the most advantageous use of the same."

Hutchins now owns the gristmill privilege on dam C described in *Horne* v. *Hutchins*, 71 N. H. 128; and the ground of his exception to the foregoing findings and order is that they deprive him of the superior or preferential rights that are attached to that privilege. To run all the wheels at the gristmill at the same time, it requires sixty-nine cubic feet of water per second. The rights attached to the Horne and leather-board mills entitle them respectively to thirteen and seventeen cubic feet of water per second. The sawmill is entitled to the balance of the water pertaining to the entire privilege at dam C after the gristmill, the Horne mill, and the leather-board mill have been supplied according to their

rights. 71 N. H. 128. If there were no dam (A) at the outlet of Crooked pond, and the mills at dam C were dependent for power upon the water that naturally flowed into the pond created by that dam, and their respective rights were as now, the gristmill would be entitled to the use of water to the extent of its rights; and if there was any left, the other mills would be entitled to it according to their respective rights. Dam A creates a reservoir in which the water falling in the wet seasons of the year is impounded and held for use in the dry seasons. The reservoir, as it existed at the date of the Goodwin deed, was equivalent in capacity to that portion of the present reservoir which is above a level plane located four feet below the top of the dam; and, as the superior court's finding is understood, contained a quantity of water sufficient, when augmented by the ordinary rainfalls from time to time, to supply a draft from it of 130 cubic feet per second during ten hours of each working day in the year. Dam A enables the parties to cause a uniform stream to flow from the reservoir into the pond created by dam C, instead of the natural and variable stream that would exist in its absence. The effect of the reservoir, actually and legally, is to substitute an artificial, uniform stream for the natural, variable stream. The gristmill is entitled to its preferential and common rights in the water-power created by dam C in connection with the reservoir and artificial stream, the same as it would be if the stream were natural. The capacity of the reservoir is a question of fact, and the finding of the superior court upon it binds this court. The only question of law that is raised by the exception to the finding is whether there was evidence to support it; but this exception is not insisted upon. The capacity of the reservoir being sufficient to supply the pond at dam C with 130 cubic feet of water per second, the order apparently insures to Hutchins a sufficient quantity for the enjoyment of his rights as owner of the gristmill.

The reservoir right appurtenant to the water privilege at dam C is common to the gristmill privilege, the Horne privilege, the saw-mill privilege, and the leather-board mill privilege, into which the entire privilege is at present divided; and the gristmill's superior or preferential right attaches to its common right in the reservoir, as it does to the water actually flowing to dam C. Consequently, if at any time there is only sufficient water in the reservoir to supply the gristmill according to its right, it would be entitled to that water in preference to the other mills. These rights, however, being common, each must be exercised reasonably, in view of the other rights. The plaintiffs are not entitled to have unreasonable drafts made upon the reservoir for their benefit, nor is Hutchins entitled to have the water unreasonably held in the

reservoir for the benefit of the gristmill. Any rule that can be established will no doubt operate temporarily in exceptional cases to the injury of one or the other of the conflicting interests. All that can be expected of a rule is that it shall operate generally so as to give all the common owners their respective rights. The true rule may not be found until pointed out by the experience of many years. If it shall be found that the draft of 130 cubic feet of water per second from the reservoir unreasonably exhausts it in ordinary years, so that generally there is not sufficient water left to supply the gristmill to the extent of its rights for considerable portions of the year, it would show that this draft was too large and should be reduced. The rights of the parties are so related to each other, and depend so much upon conditions of the weather and seasons which cannot be foreseen, that more satisfactory results can be obtained by an agreement of the parties than by any rule that can be formulated by the court; and as their rights are now fully understood, it is probable that they will have no further controversy respecting their enjoyment.

As appears from the quotation already made from *Horne* v. *Hutchins*, 71 N. H. 117, it has been decided that the right to the use of the reservoir beyond the uses appurtenant to the water privileges at dam C "remained for any and all purposes in the grantors" of the Goodwin deed. This right passed by the deed of the Winnipiseogee Lake Cotton and Woolen Manufacturing Company to Brewster and Martin, dated January 22, 1889, and by subsequent mesne conveyances to the defendant Hutchins, and is now owned by him. The order of the court makes a plane located four feet below the top of dam A the division between the reservoir rights in existence at the date of the Goodwin deed and the additional rights that were created by the improvements subsequently made. It provides that "when the waters of the reservoir fall more than four feet below the top of the reservoir dam, the said Berrys are entitled to have said reservoir dam closed until the water shall accumulate in the reservoir in sufficient quantity to run the mills at dam C for an economical period." The practical effect of this provision is to greatly limit, if not entirely destroy, the right which Hutchins has to the additional reservoir capacity created by the lowering of the bottom and outlet of the reservoir. The rights of the parties in the reservoir do not relate to its head of water as a direct means for producing power, but to its capacity for storing water to supply power to water privileges located upon its outlet. The body of water controlled by dam A is a reservoir—not a mill-pond. The division made by the owner was designed to divide this body of water— not the power available at dam A. This division can be made

without subjecting Hutchins' right to the injury above referred to, by considering the entire body of water as common, and apportioning to each owner the quantity to which his right entitles him. Such a division also more nearly conforms to the nature of water —a fluid the atoms of which are mobile and continually changing in position under the influences of temperature, winds, and other causes. Neither Hutchins, as the owner of the rights created by the improvements, nor the owners of the mills at dam C have a right to the use of any particular atoms of water contained in the reservoir, whether the same be above or below the plane referred to. When this case or its predecessor was before the referee, he found that the entire reservoir created by dam A would supply 157 cubic feet of water per second for ten hours a day, six days in the week, the year around. If this be so, there is no reason why the division should not be made by apportioning 130 cubic feet to the mills at dam C, and the remainder to Hutchins to be used by him whenever and wherever he pleases, disregarding altogether the four-feet limit mentioned in the order. If, as has been previously suggested, it should turn out that these quantities are not correct, the quantities can be ascertained with reasonable definiteness, and the apportionment can be made accordingly. The rights of the parties being definitely determined, it only remains for them to apply their rights to the existing conditions.

By a contract between the defendant Hutchins and the Winnipiseogee Lake CoWoolen Manufacturing Company, dated February 1, 1904,s bound himself to discharge from the reservoir not less than seventy nor more than ninety cubic feet of water a second, ten hours each working day during the period of one year from the date of the contract; and, upon request of the company in case of necessity, to discharge additional quantities, if there was sufficient water for the purpose without exhausting the reservoir. He attempts to justify the contract under the provision in the Goodwin deed, in behalf of mills located upon the Winnipiseogee and Merrimack rivers. He says that this provision, in legal effect, created an exception from the grant of water rights described in that deed; and that he, as the successor in title of the Lake Company through Brewster and Martin and other intermediate owners, owns the excepted right and is at liberty to make use of it as provided in the contract. Assuming that he is the owner of this right, it or any of his other rights in the reservoir does not authorize him to make the contract in question. The right excepted or reserved—it is immaterial to the present inquiry whether it was an exception or reservation—differs essentially from the right attempted to be exercised by means of the contract. In the exercise of that right, the Lake Company

was not at liberty, nor is Hutchins as its successor in title at liberty, to consider the use of water at dam C as interfering with the use of the reservoir for supplying water to the mills upon the lower rivers, without regard to the necessities of the mills. The right is not to be exercised arbitrarily whenever the one entitled to exercise it thinks proper or sees fit, but only when there is a reasonable necessity for its exercise, for the advantageous use of the reservoir, as a reservoir for the lower mills. The rights in the reservoir granted for the benefit of the water privileges at dam C, and the rights reserved or excepted for the benefit of the lower mills, are interdependent; and each must be exercised reasonably, having regard to the other, and so that the other will be injured as little as possible. It is found in this case that the use of the reservoir prescribed by the order is " a reasonable and advantageous use of the first four feet of the water of the reservoir for all of the mills on Smith's river, considering their relative rights, for the Lake Company, and for the mills on the Winnipiseogee and Merrimack rivers, who are parties to this case, as it equalizes the flow of the water from the first four feet of the reservoir and gives to all its daily uniform or average flow." The modification of the order above suggested cannot affect this finding. Indeed, it is not easy to perceive how the mills on the lower rivers can be injured by the order, since all the water discharged from the reservoir must flow into Lake Winnipiseogee, the immediate reservoir of those mills, and be temporarily impounded there, especially if the discharge from reservoir is 250 cubic feet per second, as it would seem that it is from *Winnipiseogee etc. Co.* v. *Gilford*, 67 N. H. 514, 516. It is possible that Winnipiseogee lake might be full when the upper reservoir was not full; but if so, it is probable it would be soon drawn down so that it would impound the water discharged from the upper reservoir. In other words, it is apparent that the Lake Company, as has been found, overestimated at first the importance of the upper reservoir for its purposes, and at the time of its conveyance to Brewster and Martin had learned its mistake, and then practically abandoned its reserved or excepted rights in that reservoir. If Hutchins has succeeded to these rights, they are equally useless in his possession. At all events, the mill privileges on the lower rivers. have a reasonable use of the upper reservoir under the court's order, considering the rights of all parties interested in the reservoir. The right described in the contract of February 1, 1904, is arbitrary and absolute, and conflicts with the water rights at dam C conveyed by the Goodwin deed. There was no error in the court's ruling that it is void as to those rights. Hutchins cannot avail himself of the reserved or excepted rights mentioned

in the Goodwin deed to hold back the water in the upper reservoir for the benefit of his privileges at dam B or his privileges at dam C, to the prejudice of the rights which the plaintiffs have acquired under that deed.

The order of the superior court should be modified to the extent suggested in this opinion, and not otherwise. All other exceptions are overruled.

*Case discharged.*

YOUNG, J., did not sit: the others concurred.