Carroll,       }
April 3, 1906. }

## HUTCHINS *v.* BERRY & *a.*

PETITION, by the plaintiff, for a further order as to the use of the water of the reservoir at the outlet of Crooked pond and Smith's river.   Transferred from the June term, 1905, of the superior court by *Wallace*, C. J.

The petition was filed July 17, 1905, and was heard September 6. At the time the petition was filed, the water in the reservoir was seven inches above a point four feet below the top of the reservoir dam.   At the time of the hearing, the water in the reservoir was half an inch above the same point.   Hutchins does not now wish to draw the water below the four-foot point.   The petition alleged that the draft of water required under the order of the court would exhaust the water in a short time, so that there would not be enough remaining above the four-foot point to supply the gristmill, and asked for a modification of the order to preserve the gristmill's preference.   The facts found in *Berry* v. *Hutchins, ante, p.* 310, and in *Hutchins* v. *Berry, ante, p.* 603, were made a part of the case.

Subject to exception, the court refused to enter a decree in terms requested by Hutchins, as follows: " It is ordered that while the water at dam A stands less than seven inches above the four-foot point, the said Hutchins shall not discharge but sixty-nine cubic feet per second to dam C on every working day of ten hours, to supply the preferential rights of the gristmill, the Horne mill, and the leather-board mill in their order of preference.   It is further ordered that when the water stands six inches below the top of dam C, the gate at the sawmill shall be closed when it interferes with the operation of either the gristmill, the Horne mill, or the leather-board mill, and that said Horne mill and said leather-board mill shall cease to draw water whenever it interferes with the operation of the gristmill."

*James A. Edgerly* and *Felker & Gunnison*, for Hutchins.

*Leslie P. Snow* and *Sewall W. Abbott*, for the Berrys.

PARSONS, C. J.   The order which the court were asked to modify is stated *ante, p.* 312, and provides that " when the waters of the reservoir fall more than four feet below the top of the reservoir dam, the said Berrys are entitled to have said reservoir dam closed until the water shall accumulate in the reservoir in sufficient quantity to run the mills at dam C for an economical period."

The rights of the parties have been heretofore fully considered and determined. No new question of law is now presented. It has already been held that "the gristmill is entitled to its preferential and common rights in the water-power created by dam C in connection with the reservoir and artificial stream, the same as it would be if the stream were natural. . . . And the gristmill's superior or preferential right attaches to its common right in the reservoir, as it does to the water actually flowing to dam C. Consequently, if at any time there is only sufficient water in the reservoir to supply the gristmill according to its right, it would be entitled to that water in preference to the other mills. These rights, however, being common, each must be exercised reasonably, in view of all other rights. The plaintiffs [now defendants] are not entitled to have unreasonable drafts made upon the reservoir for their benefit, nor is Hutchins entitled to have the water unreasonably held in the reservoir for the benefit of the gristmill." *Ante, p.* 313. Although the draft of 130 cubic feet per second, found to be the average flow of the reservoir for ten hours of each working day, may be too large or may be too small, and upon further observation and experience should be changed, as that amount purports to be only the uniform daily flow of the reservoir in the average year it is manifest, even if the fact is correctly found, that in some of the years the draft will be too large, in others too small. While the flow in any given year cannot be indicated long in advance, it seems probable that the character of the early part of the season would afford some indication whether the yield of the reservoir might reasonably be expected to be above or below the average in a particular year. As has been already pointed out, by agreement the parties might possibly arrange to take advantage of the varying rainfall. *Ante, p.* 314. Whether, if they are unable or unwilling to do so, the use of the reservoir can reasonably be regulated upon any other basis than its average yield, one year with another, is a question of fact. It has been found that regulation by such an order affords "a reasonable and advantageous use" of the reservoir right appurtenant to dam C. There is no suggestion that this finding was made without evidence. When under such regulation the flow of the reservoir is exhausted, as it is apparent and is found it may be in some years, to keep dam A closed until sufficient water had accumlated to run all the mills at dam C for an economical period would deprive the gristmill of its preferential right.

The order was made without reference to the gristmill right, which was not then before the court; and in so far as it prohibits the drawing of water for the gristmill when there is any above the four-foot point, the order is erroneous and should be modified, so

that water may be drawn if desired for the use of the gristmill whenever there is water above the four-foot point. But no error of law appears in the refusal to limit the discharge at a particular point to the sixty-nine cubic feet per second, for it cannot be said as matter of law that such limitation at that point is reasonably necessary to the protection of the gristmill's preferential right.

In *Hutchins* v. *Berry, ante, p.* 603, it was found that a reasonable exercise of the right of preference of the gristmill is not to close the gates of the other mills until the water is six inches below the top of the Pickering dam (C). No question has been raised as to the right of the gristmill to require the other mills to shut down at this point when the daily average flow is insufficient for all the mills. The order made in the last named case required that the full amount fixed on as the average flow should be allowed to flow from the reservoir before the gristmill could require any of the mills to shut down. No legal reason appears for the modification of this order. The argument by which the requested modification is supported is that the average flow does not equal that found by the court. A daily draft of more than the average flow may, as is claimed, give the sawmill and other mills water to which they are not entitled; but the error, if one exists, is one of fact. No error of law is shown until the error of fact is established. The questions presented on both motions are questions of fact which are not open to this court.

The reservoir right of the mill-owners on the Pickering dam is no more extensive than it was at the date of the Goodwin deed, which was to use a reservoir capable of being drawn down four feet from the top of the dam. In *Horne* v. *Hutchins,* 72 N. H. 211, 215, it was said that "privilege C has such a right in the use of the waters of the new reservoir as would be equivalent to its right in the use of the waters of the old reservoir, viz., the right to the reasonably necessary use of the first four feet of water reckoning from the top of the dam"; and "while the owners of C cannot require the owners of A to draw down the water below the first four feet, for use at C, the owners of A cannot make use of the water, either above or below the four-foot point, so as to interfere with the reasonable use of the first four feet of water by C." It was not said that the right of C was absolute in the first four feet of water, but only that it was a right to an equivalent reservoir. While it was said that the owners of dam C could not require the owners of A to draw the water below the four-foot point, it was not said the owner of A might not do so if it could be done without unreasonable interference with the reservoir right of C.

After this decision, upon the determination that the average

flow of the four-foot reservoir in the average year was 130 cubic feet per second, the order reported in *Berry* v. *Hutchins, ante, p.* 310, was made, and the case came here on exception by Hutchins, the owner of dam A. By this order, the owner of dam A was required to let down for the use of dam C the average flow of 130 cubic feet per second until the four-foot point was reached, when the dam was to be closed and remain so until sufficient water had accumulated to operate the mills at dam C for an economical period. It is obvious that the owners of C could not complain of this order as between themselves and A, since it gave them not merely the equivalent reservoir to which it had been held they were entitled, but precisely the same reservoir which it is found existed at the date of the Goodwin deed. If the owners at C had let down for use by them as much water as they could have had from the reservoir as it existed when their rights attached, it is manifest they received their entire right. The order limiting the draft upon the reservoir to the four-foot point rendered the residue of no avail to the owner of dam A in case he wished to draw the water for use. If the whole reservoir would yield more than the upper four feet, keeping the water impounded below that point was of no benefit to the present defendants, and as then appeared rendered his right as owner of A useless to the plaintiff. The only question open after the previous decision of the court, under which the order was made, was whether the owner of dam A was by this order unnecessarily prevented from the enjoyment of the additions to the reservoir made after the date of the Goodwin deed, which it had been determined belonged to him. Could he draw the water below the four-foot point without unreasonably interfering with dam C's right to a reservoir equivalent to the upper four feet? Upon consideration of the nature of the rights of the parties as previously established, a method was indicated by which the owner of dam A might enjoy the additional reservoir right belonging to him if he desired to use his property as a reservoir, *Berry* v. *Hutchins, ante, p.* 310.

It appeared that the head at which the water was drawn from dam A was of no moment to the users of dam C; hence the enjoyment of their right would not be affected by drawing the water from below the four-foot point, if they received the amount of water to which they were entitled. It appeared to be found as a fact that while the upper four feet furnished an average flow of 130 cubic feet per second, the whole reservoir would supply 157 cubic feet per second. Assuming these figures to be correct, so long as the owner of A supplied the owners of C with 130 cubic feet per second, the excess twenty-seven cubic feet, or whatever it might be, it was apparent could be used by him as he pleased

without any interference with the rights of C, as it had been previously held he might use the water above or below the four-foot point provided he did not unreasonably interfere with their reservoir right. *Horne* v. *Hutchins*, 72 N. H. 211, 215. The order made, prohibiting the owner of A from drawing the reservoir below the four-foot point, was in conflict with the prior decision that his right to make use of the water was limited only when such use unreasonably interfered with the reservoir right of C. Hutchins' exception was therefore sustained, and the modification of the express prohibition suggested. *Ante, pp.* 310, 315, 317. Neither of the parties have asked the superior court to modify the order in this regard, and no question relating thereto is transferred; but as counsel appear to entertain divergent views on the question, it has been thought it might be of advantage to the parties to refer to it at this time. It is now suggested that it is for the plaintiff's interest to keep the water in the reservoir at or above the four-foot point, to maintain the head at dams A or B. Presumably for that reason he has not applied for the modification of the order which, when these cases were last before the court, it was held he might have. As by the order the owners of dam C have been given the advantage, not merely of a share in the entire reservoir equivalent to the reservoir appurtenant to that dam, but precisely the same reservoir which was originally attached thereto, they have, as has been said, no ground of complaint. Should the plaintiff exercise his right to draw the average flow of the entire reservoir, instead of the average flow of the defendants' part of or share therein, the entire reservoir would be exhausted in dry years at precisely the same time that the water is now drawn to the four-foot point under the existing order. As it has been decided that the extra water so drawn would belong to the plaintiff, "to be used by him whenever and wherever he pleases," the defendants would have no right to use it or to any benefit from it. The fact that the plaintiff, by choice or because of the order of the court, has kept or keeps the water which he might have drawn in the pond gives the defendants no right to its use which they would not have had as it was drawn out. As the water remaining in the pond below the four-foot point is the plaintiff's under the existing circumstances, he can use it to maintain the desired head at dams A or B, since to do so will not interfere with any right of the defendants to the reservoir or the water in it.

These suggestions are applicable only when the water has been drawn to the four-foot point by a daily draft not exceeding the average daily flow of the reservoir to that point, or has been so reduced by causes beyond the plaintiff's control. If the plaintiff should

reduce the water in the reservoir by drafts in excess of that amount, or more than 130 cubic feet, the rights of the defendants would be protected by requiring the plaintiff to draw water below the four-foot point.  So long as no more than the average daily flow of the upper part of the reservoir is drawn by the plaintiff in the early part of the season, the defendants receive their full right when the four-foot point is reached.  If the plaintiff elects to draw more, up to the average flow of the whole reservoir he must furnish the 130 cubic feet so long as that amount can be drawn.

As Hutchins owns the reservoir below the four-foot point, he has the right to fill it with earth to that point so that no water can be drawn below that point—that is, abandon it for use as a reservoir.  The fact that a physical change of the situation which Hutchins has the legal right to bring about would render impossible the execution of any order permitting the defendants to draw the water below the four-foot point establishes their want of legal right to the order.

It is said that the four-foot reservoir conserves all the rainfall of the territory tributary to dam A.  If this be so, the average yield of the reservoir has not been increased and there is no extra water for the owner of dam A to draw out.  Whether this be so or not is a question of fact which it will not be necessary to determine so long as the owner of A persists in his present determination not to draw the water.  Other questions discussed have been already decided, and no sufficient reason for their reconsideration appears.

*Case discharged.*

YOUNG, J., did not sit: the others concurred.