Carroll, ⟩
May 7, 1907. ⟨

## HUTCHINS *v.* BERRY *& a.*

Where the extent and capability of a reservoir upon which mills are dependent for power have been determined by judicial decrees in proceedings to define the rights of the various proprietors, a refusal by the superior court to reopen the question, upon the petition of one owner for interlocutory orders as to the use of the water, presents no question of law.

Whether a petition by a mill-owner for orders respecting the use of water from a reservoir should be so amended as to present for adjudication the question of his right to employ the power for a different purpose, is a matter determinable by the superior court.

A grant of the water used by a certain mill does not limit the manner or objects of the use, unless such an intent is clearly disclosed.

PETITION, for interlocutory orders in the controversies as to water rights previously before the court in the cases reported in 71 N. H. 117, 72 N. H. 211, and 73 N. H. 310, 603. Transferred from the June term, 1906, of the superior court by *Chamberlin,* J.

The plaintiff alleged that, not desiring to use the water of the reservoir below the four-foot point at this time, he proposes to change the physical condition of dam A so that no water can be drawn below the four-foot point, and to substitute gates above the four-foot point for those heretofore in use, and asked the court to fix and determine the size of the proposed gates. Under this allegation the plaintiff proposed to retry the question of the capacity of the reservoir, claiming that with the gates and physical conditions as they were in 1854 it was not possible to draw the amount of water now required to be drawn from the reservoir, namely, 130 cubic feet per second. Subject to exception, the court refused to retry the question of the capacity of the reservoir, to revise the order as to the draft of water, to hear evidence as to the physical condition at dam A prior to the improvements made by lowering the outlet of the reservoir, or to determine the size of gates, but ruled that the plaintiff might make such changes as he wished which would not interfere with existing orders as to the draft from the reservoir. The court found that the experience under the existing order was not sufficient to determine whether the amount required to be daily drawn was greater or less than the capacity of the reservoir in the average year. The plaintiff also alleged that the existing orders as to the use of water at dam C were in conflict with the opinions of the supreme court, and that

the third order, filed December 14, 1903, was not now in force as matter of law. Subject to exception, the court refused to make any change in those orders.

The plaintiff offered evidence that he now intends to remove the gristmill machinery, to put in machinery for the making of excelsior, and to use all the water the gristmill wheels can now use,—about sixty-nine cubic feet per second,—and asked leave to amend his petition by alleging his present intention to use the gristmill for other purposes. The defendants were not prepared to try such questions of fact as might be necessary to determine the rights of the parties as to the proposed use of the gristmill, and the court declined to order the defendants to a trial of these questions. The court refused to rule upon the right of the plaintiff to use the gristmill power otherwise than for a gristmill, and the plaintiff excepted.

*James A. Edgerly, Arthur L. Foote, Felker & Gunnison,* and *Charles B. Hibbard,* for the plaintiff.

*Leslie P. Snow, Sewall W. Abbott,* and *Oscar L. Young,* for the defendants.

PARSONS, C. J. Upon trial of the question of the extent of the defendants' reservoir right, that right has been found to be a reasonable use of the reservoir until it is drawn down four feet below the top of the dam; and such reasonable use has been found to consist in letting down not exceeding 130 cubic feet per second for ten hours each working day until that point is reached. *Berry v. Hutchins,* 72 N. H. 211, 214, 215; *S. C.,* 73 N. H. 310, 312; *Hutchins v. Berry,* 73 N. H. 611, 613–616. Upon the trial of that question of fact, evidence as to the amount of water that could be drawn under previously existing conditions as the limit of practicable use was approached would be competent; but if the parties were engaged in a trial of the fact as to the capability of the reservoir right attached to the Pickering dam, the exclusion of evidence of measurements of the flow of the stream under a claimed reproduction of conditions existing prior to the Lake Company improvements would not be error of law. *Cook v. New Durham,* 64 N. H. 419. The difficulty of ascertaining all the conditions which might have then affected the flow of the stream, and of determining whether they had been correctly reproduced, might be so great that an attempted investigation of the collateral question would tend to confuse rather than elucidate the issue between the parties.

Even, therefore, if the question as to the flow of the stream had

been under investigation, the refusal of the court to fix and deter-
mine the size of gates such as existed in 1854 would not present
anything for consideration here. But if the law were otherwise,
the extent and capability of the reservoir having been already
determined, error of law cannot be predicated upon the refusal of
the court, upon the facts stated, to reopen the question and grant
the plaintiff a new trial, which it is found was the object of the
motion, and which must of necessity have been its purpose if any
result was expected to follow the desired investigation. *Hutch-
inson* v. *Railway*, 73 N. H. 271, 284; *Ela* v. *Ela*, 72 N. H. 216.
The plaintiff has the right, as was ruled by the superior court, to
make any changes he desires which will not prevent the letting
down of the amount of water which it has been determined repre-
sents the capacity of the original reservoir. While the latter find-
ing stands, any change made by him which prevents the flowing
of that amount of water, it must be conclusively presumed, is the
creation of a condition different from what originally existed. As
to whether there should now be a further trial and the reception
of additional evidence, experimental or otherwise, the fact has
been found against the plaintiff. Such finding is conclusive.

The plaintiff excepted to the refusal of the court to change the
orders made and now in force for managing the water or wheels
of the different mills. The only order to which objection has been
made here is the third order, filed December 14, 1903. That order
is objected to so far as it modifies order No. 1, filed July 25, 1902,
which limited the Berry privilege to thirty-eight cubic feet per
second when the water did not run over the wasteway. The mod-
ification objected to provided that the limitation of the Berry
privilege should not take effect until the water fell eighteen inches
below the top of the wasteway. In the original brief, the plaintiff
bases his objection to the modification upon the preferential right
of the gristmill. As the owner of the gristmill was not a party to
the proceedings in which the order now objected to was made, and
as it has since been determined that the gristmill has the right to
require all the mills to shut down when the water falls six inches
below the top of the wasteway (*Hutchins* v. *Berry*, 73 N. H. 603,
611, 613), the order does not affect the gristmill and there is no
occasion to modify it for the protection of the gristmill right. In
a brief filed since the hearing, the plaintiff objects to this modifi-
cation as an invasion of his right as the owner of the leather-board
mill, heretofore called the box-factory privilege.

*Horne* v. *Hutchins*, 72 N. H. 77, was a bill in equity to deter-
mine to what extent and in what manner water was actually used
at the box factory, October 26, 1872, such use having been held
to be the measure of the box-factory right. *Horne* v. *Hutchins*, 71

N. H. 128, 137. In the former case it was found that, as between the sawmill and the box factory, there was no preference; that the water-wheel in the sawmill could use thirty-eight cubic feet of water and the penstock of the box factory could deliver seventeen cubic feet of water per second when the water in the pond stood at the level of the wasteway. The amount to which the Horne privilege was entitled having been determined in another case to be thirteen cubic feet per second, it was ordered that the gates to the respective penstocks be set so as to permit only thirteen, seventeen, and thirty-eight cubic feet respectively to be drawn when the water stood at the top of the dam and did not run over the wasteway. Both parties excepted to these findings, orders, and decrees. The exceptions were overruled. The decrees therefore are judgments establishing the rights of the parties. The order of December 14, 1903, removing the limitation upon the use by the Berry privilege until the water fell eighteen inches below the top of the wasteway, also provided that the stops on the Hutchins wheel or gate should remain as before. The occasion for this modification does not appear. As there was no preference between the sawmill and box factory, the plaintiff cannot complain in behalf of his leather-board mill that the sawmill is permitted to draw down the water in the pond; but if, as seems to be the effect of the existing order, the sawmill is permitted to draw down the water below the top of the wasteway without limitation as to the amount, while the plaintiff's gate is set so as to draw only seventeen feet when the water is at the top of the wasteway, it is manifest that the plaintiff will as the water falls receive less than the seventeen feet to which it has been adjudged he is entitled, and that the sawmill will receive more. In the absence of any findings sustaining the change ordered December 14, 1903, the same appears to be erroneous, and the exception to the refusal to change the same to accord with the judgment in *Horne* v. *Hutchins*, 72 N. H. 77, is sustained. As the relative right between the leather-board mill and sawmill is determined to be in the ratio of seventeen to thirty-eight, it is immaterial to the plaintiff Hutchins whether the amount taken as the measure of the rights of the two —seventeen plus thirty-eight cubic feet—is excessive as against the right of the Horne privilege.

Whether justice required that the plaintiff should be permitted to amend his petition, so as to present for adjudication his right to use the water at the gristmill for other purposes, is a question of fact. The denial of the motion presents no question of law.

It was said in *Hutchins* v. *Berry*, 73 N. H. 603, 604,—a bill in equity brought by the plaintiff to determine the gristmill right,— that "in the absence of a definite specification of the amount of

water excepted or the manner of its application to produce power, it must be understood the parties contracted with reference to the manner and extent the water was then at the date of the deed actually used for the purpose specified." It appears to be well settled that when a right exists to use a certain quantity of water, a change in the mode and objects of the use without increasing the quantity is no violation of the right. *Fuller* v. *Daniels*, 63 N. H. 395; *Dow* v. *Edes*, 58 N. H. 193, 194; *Wiggin* v. *Wiggin*, 43 N. H. 561, 566; *Whittier* v. *Company*, 9 N. H. 454, 458; *Johnson* v. *Rand*, 6 N. H. 22. The sole question, then, is whether by the reservation in the Colby deed the parties understood the matter reserved was merely a right to operate a gristmill, and not the right to use a certain part of the water for power. It was said in *Fowler* v. *Kent*, 71 N. H. 388, 394, that "it would require very explicit language to overcome the natural inference that a person would not accept a deed of a mill privilege subject to the condition that his water rights should become forfeited if any change was made in the manner, purpose, or place of use." But whether the question is simple or difficult, the interpretation of the Colby deed is not now before the court. The superior court has ruled that the defendants ought not now to be compelled to litigate the question. This court cannot assume that there may not be some evidence which the parties can present which will aid the interpretation. Neither can they assume that all the facts bearing upon the question have been presented in the numerous cases between the present and other parties, involving this water-power, that have been before the court. If that fact could properly be assumed, the court would not take the time to search the voluminous record in these cases, which presents many other questions, for facts that may be material upon this. If the question is to be intelligently considered, it should be presented upon a record which contains in itself all the facts which either party conceives to be material. The evidence as to the modification of the original order regulating the flow of water to the Berry privilege should have been received; and unless facts appear authorizing a change, the original order should be restored.

*Case discharged.*

YOUNG, J., did not sit: the others concurred.