### NEWMARKET MFG. CO. v. CHAPMAN.

### CHAPMAN v. NEWMARKET MFG. CO.

(Circuit Court of Appeals, First Circuit. January 30, 1913.)

### Nos. 1,003, 1,004.

APPEAL AND ERROR (§ 855*)—CONTENTION NOT PASSED ON IN TRIAL COURT—RES JUDICATA—JUDGMENT IN STATE COURT.

Where the District Court of the United States, in a suit involving defendant's right of flowage on complainant's land, reached a correct determination of the case, without reference to any findings in a prior suit in the state court, or inquiry as to how far complainant's rights had been determined thereby, the question of res judicata would not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3406; Dec. Dig. § 855.*]

Appeal from the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Suit by Electa A. Chapman against the Newmarket Manufacturing Company. From a decree granting relief, both parties appeal. Affirmed.

Oliver W. Branch, of Manchester, N. H. (Branch & Branch, of Manchester, N. H., on the brief), for plaintiff.

John Scammon, of Exeter, N. H. (Davis, Peabody & Brown, of Boston, Mass., and Eastman, Scammon & Gardner, of Exeter, N. H., on the brief), for defendant.

Before DODGE, Circuit Judge, and BROWN and HALE, District Judges.

HALE, District Judge. This action in equity involves defendant's right of flowage on complainant's lands. The bill alleges that for more than six years past the defendant has maintained its main dam and waste gates at Newmarket, N. H., on the Lamprey river, and that it has maintained certain other dams and waste gates on its storage ponds some miles above Newmarket, in such a manner as to cause an unreasonable height of water, and an unlawful flowage of complainant's lands at Newmarket.

The complainant is the owner of a farm located on the easterly bank of the river, partly in Durham, Stratford county, and partly

in Newmarket, Rockingham county, in New Hampshire. She complains that by the unlawful acts of the defendant at certain times of the year, for more than six years past, her farm has been overflowed and submerged by water, and the grass thereon growing has been injured, and the soil itself greatly damaged. The defendant denies the improper use of the main dam and gates at Newmarket, and of the dam and gates on its storage reservoir, and asserts that it has not exceeded the rights of flowage acquired by three certain deeds from the complainant's ancestors in title, namely, the deed of December 11, 1824, April 26, 1833, and September 14, 1840, and that it has the right under those deeds to hold back the water by means of its main dam, and to flow complainant's land in a reasonable manner whenever it has a beneficial use for the water.

The further claim is made by the complainant that by a suit brought in the state courts of New Hampshire, which resulted in a judgment for the present complainant, it was determined, on appeal to the New Hampshire Supreme Court, that the operation by the defendant of its waste gates in connection with its main dam has been determined to be unreasonable and unlawful, and that damages have been awarded to her for such unreasonable and unlawful use; but that since the decision of the case in the state court the defendant has continued to keep its waste gates shut when the water in the river has been high enough to pass over the dam, and has caused an unreasonable and unlawful flowage of complainant's farm. The defendant denies that it has ever been determined at law that closing the waste gates on the dam at Newmarket when the water is high enough to pass over the same is unreasonable and unlawful.

The case was referred to a master, who heard all the evidence and made a complete report to the District Court. In that report he found, among other things, that a reasonable use of the dam requires that its waste gates should be raised in times of high water, at certain seasons, to prevent an unreasonable flowage of complainant's land; that the evidence before him disclosed that the water was running excessively high over the dam at certain times enumerated by him, and that the waste gates were not used to their full capacity; that the evidence has led him to the conclusion that the defendant has not always done its best to protect the complainant's land in times of high water, and the result has been an unreasonable flowage. The master makes it clear that in saying that the defendant has "not done its best" he means that the defendant has not exercised all the reasonable care which a prudent man should use, under the circumstances, to prevent the flowage of the complainant's land in times of very high water. After considering the testimony before him, the master finds that little, if any, damage can result from the water flowing over the dam at a height not exceeding four inches above the flashboards of the dam. In his report he mentions the finding of the jury, and of the court, in Chapman v. Newmarket Manufacturing Co., 74 N. H. 424, 68 Atl. 868,

15 L. R. A. (N. S.) 292; and he makes some reference to the determination of the state court in that case, and to the fact that the claim is made by the complainant that certain questions of fact, passed upon in that case, have become res adjudicata.

In September, 1912, this case came on for hearing in the District Court of New Hampshire. At that hearing the District Court recommitted the master's report for specific findings, independent of the findings in the action at law in the state court of New Hampshire. The District Court requested the master, from the evidence before him, and without further arguments, to report what is a reasonable height for the defendant to allow the water to flow over the flashboards of the dam, both when its mill is in operation and when it is not in operation, and to find specifically whether the defendant has kept its waste gates closed, and thereby caused the water to rise to a higher point than is reasonable and lawful, resulting in damage to the complainant. Thereafterwards the master made a supplemental report, as follows:

"There were two views during the hearing before me; and upon recommittal of this case I make the following specific findings, based solely upon the evidence submitted before me, and entirely independent of the findings of the jury or the evidence submitted to that jury in the action at law formerly pending in the state court:

"(1) Four inches on the dam is a reasonable height for the defendant to allow the water to flow over the flashboards of the dam in question as now maintained, both when the defendant's mill is in operation and when not in operation.

"(2) I find specifically from the evidence presented before me that the defendant has unreasonably kept its waste gates closed, thereby causing the water to rise to a higher point, resulting in flowage and consequent damage to the plaintiff.

"(3) Solely from the evidence presented before me, I assess the damages resulting to the plaintiff from the unreasonable use of the dam at $600."

The District Court then ruled that it found no ambiguity in the deeds to which reference has been made; that the right of flowage is one to be used reasonably—the principle of reasonableness under an express grant having been recognized in Chapman v. Newmarket Manufacturing Co., 74 N. H. 424, 68 Atl. 868, 15 L. R. A. (N. S.) 292, and in State v. Sunapee Dam Co., 70 N. H. 458, 460, 50 Atl. 108, 59 L. R. A. 55. The District Court therefore affirmed the supplemental report, and entered a decree:

(1) That the plaintiff have judgment against the said defendant for the sum of $600, with costs.

(2) That the said defendant be enjoined and restrained from keeping the waste gates in its dam, in the town of Newmarket, closed when and after the water reaches a height of four inches above the top of the flashboards thereon.

(3) It is further ordered, adjudged, and decreed that upon application to its office the defendant shall at all reasonable times admit the plaintiff or her agents to the millyard to observe the height of the water upon said dam and the position of the said waste gates.

Exceptions were taken by the defendant to the master's supplemental report; and an appeal was taken by the defendant from the decree of the District Court.

The complainant also appealed from the decision of the District Court, alleging that the court erred in denying complainant's motion for a mandatory injunction in accordance with the master's original report, as follows:

"That if in times of high water it becomes impossible to control the water in said river by means of the waste gates in said dam said defendant shall close the gates in its storage reservoirs, known as Pawtuckaway Pond and Mendum's Pond, and thus reduce, so far as possible, the flow of water in said river until such excessive high water shall have abated, so that the same can be controlled by said waste gates."

Touching this appeal of complainant, there is nothing in the master's report which would have justified the District Court in taking the action asked for. It is enough for us to say that we find nothing in the record which warrants us in further considering the complainant's appeal. It is clear that the District Court committed no error relating to it.

In reference to the appeal of the defendant, it appears that the final decree of the District Court was based entirely upon the supplemental report of the master. That court reached a complete and correct determination of the cause without reference to any findings in the suit in the New Hampshire state court, or to the inquiry how far complainant's rights had been determined by that suit. There is, therefore, no need for us to consider how far the questions brought before us in this appeal are res adjudicata. The District Court properly held that, although the deeds to which we have referred were absolute in form, they do not grant a right to exercise the easement in an unnecessary and unreasonable manner. Olcott v. Thompson, 59 N. H. 154, 156, 47 Am. Rep. 184; Bean v. Coleman, 44 N. H. 539, 543; Berry v. Hutchins, 73 N. H. 310, 316, 61 Atl. 550.

We think the judgment of the District Court was without error. In each case the decree is as follows:

The decree of the District Court is affirmed; and the appellee recovers costs of appeal.